## Louisville Joint Stock Land Bank v. McNeely.

(Decided Feb. 26, 1937)

426

CHARLES A. PEPPER for appellant.
R. W. LISANBY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF—
Affirming.

In July, 1916, H. B. McChesney executed his note to S. M. Williamson & Co., Inc., of Memphis, Tenn. (hereinafter called Williamson & Co.) for $1,600 and to secure the payment of same he executed a mortgage on four certain tracts of land located in Caldwell county, Ky. In March, 1922, McChesney executed his note to E. L. McNeely for $416 and to secure the payment of it he executed a mortgage on the same real estate. In October, 1922, McChesney obtained a loan from the appellant, Louisville Joint Stock Land Bank (hereinafter called the Bank) for $2,600, and to secure this loan he executed to the Bank a mortgage on the same real estate. At the time McChesney obtained the loan from the Bank the Williamson & Co. note had been reduced by McChesney to $1,375.74, which sum was paid to Williamson & Co. by the attorneys or representatives of the Bank out of the proceeds of the loan from the Bank to McChesney and the Williamson & Co. lien was released. After the payment of other small debts listed

by McChesney in his written application to the Bank for the loan, there was left the sum of $834.38, which was paid to McChesney, but no part of McNeely's debt was paid.

It appears that the $2,600 note of McChesney to the Bank was payable on the amortization plan and the payments were made until about the year 1934 when McChesney defaulted and the Bank filed this suit in the Caldwell circuit court to recover the balance of the note and foreclose its mortgage lien but failed to make McNeely a party to the action. The Bank obtained judgment, and the land in lien was ordered sold by the court's commissioner in satisfaction of the balance of its debt, and the Bank purchased the land at the commissioner's sale for the sum of $2,000. On the day the land was sold McNeely filed his petition seeking to foreclose the mortgage he held against the land to secure the payment of his note, asserting that his lien was prior and superior to the lien of the Bank and asked that he be adjudged priority in lien for the payment of his debt. The two actions were consolidated.

It appears that in order to get the land out of the possession of McChesney it was agreed by the Bank and McNeely that the report of sale made by the commissioner might stand without exceptions and that the master commissioner execute a deed to the land to the Bank without prejudice to the rights of the Bank and McNeely on any question at issue between them, and particularly without prejudice to McNeely's lien against the land.

The Bank filed its answer to the petition of McNeely denying the allegations of it, and, by paragraph 2 it pleaded that the alleged mortgage executed by McChesney to McNeely was never acknowledged by the grantors in the way and manner provided by law, or at all; and further, that the description of the land referred to in the mortgage ''is too vague, indefinite and uncertain to enable plaintiff to identify said land and said description as contained in said mortgage is too vague, indefinite and uncertain to afford or impart constructive notice to this plaintiff of its contents, and the recording thereof gave no notice, actual or constructive, to this plaintiff of the contents of said mortgage or of the description of the lands sought to be included therein and plaintiff had no actual knowledge

of said mortgage and had no knowledge actual or constructive that the land described in McNeely's mortgage was the same as that described in plaintiff's mortgage."

In paragraph 3 of its answer the Bank pleaded that at the time it made the loan to McChesney, McNeely knew and had knowledge of the fact that it was lending its money to McChesney under the agreement and upon the sworn representations of McChesney that it was getting a first mortgage on the land and with knowledge of these facts McNeely maintained silence as to his mortgage and suffered and permitted it to make said loan to McChesney and that it was the duty of McNeely at the time to notify plaintiff of the existence of his mortgage and that by reason of his failure to do so he is estopped from claiming priority as against the mortgage of the Bank.

In paragraph 4 it pleaded that it loaned the money to McChesney for the purpose of enabling him to pay off and discharge a first lien mortgage held by Williamson & Co. and the money was so used for that purpose and by reason thereof the plaintiff is entitled to be subrogated to the rights of Williamson & Co. as against McNeely and as against him it is entitled to have its mortgage declared to be a first lien on the land described in the petition.

Subsequent pleadings were filed, the issues made and the evidence taken, and upon trial of the case the court found and adjudged, in substance, that out of the proceeds of the $2,600 loan by the Bank to McChesney the Bank paid Williamson & Co. the sum of $1,378 (the evidence of the representatives of the Bank and the exhibits filed show the exact sum to be $1,375.-74), the balance due on the date of the loan, the payment of which balance being secured by the first mortgage lien of Williamson & Co. debt of July 5, 1916, and under the law of subrogation the Bank was entitled to the benefit of the lien held by Williamson & Co. on the land, or the proceeds of the sale thereof, and that the remainder of said $2,600 loan over and above the Williamson & Co. debt represented an additional loan; or, in other words, as to the surplus of the loan over and above the Williamson & Co. debt, the Bank occupied the position of a third lienholder, which lien was inferior to McNeely's lien, and adjudged McNeely

a lien on the land or the proceeds thereof, and further adjudged that the land be sold in satisfaction of McNeely's debt, interest, and costs, subject to the Williamson & Co. debt secured by the first lien, to which the Bank was subrogated by having paid same for Williamson & Co.

It appears that at the time the Bank filed its suit McChesney had paid to it the sum of $1,177.50, on the principal sum of the $2,600 note, which sum so paid was $198.24 short of the Williamson & Co. debt of $1,375.74, and the court held that the sum paid on the note, $1,177.50, should be credited on the Williamson & Co. debt secured by the first lien to which the Bank was subrogated. The Bank excepted to the judgment, and this appeal follows.

For a reversal of the judgment it is insisted that the court erred in adjudging McNeely any lien on the land as against the Bank because, as alleged in its answer, (a) the description of the land mentioned in the mortgage was insufficient; (b) the certificate of acknowledgment of the mortgage was also insufficient; and (c) the court erred in its application of the whole credits of the payments made by McChesney to the Bank on the $2,600 note by crediting those payments to that part of the note representing the amount of the balance of McChesney's debt to Williamson & Co.

(a) The description of the land in the mortgage from McChesney to McNeely is as follows:

"* * * four certain tracts of land lying and being on the waters of Donaldson creek in Caldwell Co., Ky. and bounded as follows: on north by the land of Mary Jane McChesney, on West by the land of J. H. McDowell, Hewlett McDowell and Herb McNeely, on south by the lands of J. H. Carner & Mrs. Jennie McChesney and on East by E. L. McChesney land to the beginning containing 105 acres more or less."

The test as to the sufficiency of a description of land is whether the land can be located therefrom. It is the established rule that great liberality is allowed in the matter of description and the description will be held sufficient if it is such as will enable any interested party to locate the land. Bond v. Dean et al., 223 Ky. 713, 4 S. W. (2d) 721, and cases cited therein. In the

Bond Case supra, there is cited the case of Virginia Iron, Coal & Coke Co. v. Combs, 186 Ky. 261, 216 S. W. 846, wherein the court held sufficient the following description:

"All the coals, metals, oils, gases, and mineral products lying, being upon and under our lands in the county of Perry, state of Kentucky, and described as follows, viz.: On the waters of Lot's creek and Carr's fork, adjoining the lands of Sam Napier and Clinton Combs, 212 acres being patented in my own name, etc., 300 bought from A. C. Combs, being 512 acres."

Again in the case of Foster v. Roberts et al., 179 Ky. 752, 201 S. W. 334, 335, this description was held sufficient:

"my undivided interest and share to a certain tract or parcel of land of which my said father, Stephen Owens, aforesaid, died seized and possessed, lying on the waters of the Little South fork of Cumberland river in Wayne county, containing about 365 acres in all."

And aside from the description of the land as indicated in the mortgage, it is conceded by the representatives of the Bank that in the written application of McChesney for the loan he disclosed his indebtedness to McNeely. J. W. Brantley, secretary and treasurer of the Bank, testified in part as follows:

"Q. What debts does that application show Mr. McChesney at that time owed? A. It shows that he owed a mortgage on the farm of $1378 to S. M. Williamson & Co., another of $425.00 to E. L. McNeely and about $200.00 of debts for current expenses."

The description of the land set out in the mortgage, though somewhat meager, considered together with the evidence of the officials of the Bank, it is at once apparent that it is amply sufficient to constitute notice to the Bank of McNeely's mortgage.

(b) The next complaint is directed to the form of the certificate. It reads:

"I, G. W. Lane Notary Public for the County and State aforesaid do certify that the foregoing mortgage from H. B. McChesney, L. L. McChesney, his wife, to E. L. McNeely was this day produced

to me in Caldwell Co., Ky. and acknowledged before me by them to be their act and deed for the uses and purposes therein mentioned. Witness my hand, this first day of April, 1922.''

The alleged vice complained of is that the certificate does not show that H. B. McChesney and his wife acknowledged the mortgage. This contention is based upon the pronoun ''them'' where it reads, ''and acknowledged before me by them to be their act and deed.'' It is argued that the word ''them'' might refer to any person named in the instrument. It is common knowledge that in deeds and mortgages the grantors or mortgagors sign and acknowledge the instrument. It might have been more precise and a better form to have repeated the names of the mortgagors instead of referring to them by the pronoun ''them,'' but it is our view that no intelligent person could have been mislead by the use of the pronoun ''them'' as it was used in the certificate. Any person of common understanding would at once know and understand that the named mortgagors were the antecedents of the pronoun ''them.'' It follows that the chancellor did not err in holding sufficient both the description of the land and certificate to the mortgage and that McNeely's mortgage lien was superior to the Bank's lien for the surplus of the note over and above the Williamson & Co. debt, and as to the surplus the Bank occupied the position of a third lienholder, or second as to McNeely, after the Williamson & Co. lien had been discharged.

(c) At the time the Bank made the loan to McChesney and the execution of the mortgage to secure the loan, Williamson & Co. held a first lien on the land and McNeely held a second lien; therefore, the Bank took a third lien only, but having paid the Williamson & Co. debt, the Bank then moved up to a first lien to the extent of the Williamson & Co. debt and occupied the same position in respect to priority as Williamson & Co. would have as between it and McNeely. If the Bank should be allowed to credit the payments made by McChesney on the $2,600 note to that part of the note over and above the Williamson & Co. debt, and then assert its first lien to the extent of the Williamson & Co. debt, it would be equivalent to holding the Bank's lien superior to McNeely's lien, when in fact the Bank's mortgage was second to that of McNeely except the Williamson & Co. debt.

As between the Bank and McChesney, it may be said that the payments made to the Bank by McChesney should be credited to that part of the note unsecured or less secured, unless the creditor designates the debt to be credited by the payment. Anspacher v. Utterback's Adm'r, 252 Ky. 666, 68 S. W. (2d) 15; City of Louisa v. Horton, 263 Ky. 739, 93 S. W. (2d) 620. But where neither debtor nor creditor has applied the payment made, the court, in making the application, should exercise a sound discretion according to equitable principles so as to effectuate justice according to the equities of the case. Anspacher v. Utterback's Adm'r, supra. This rule is particularly applicable where the equities of a third person are involved. In such cases the court will apply the payments as may seem reasonable and just according to the rights of all parties involved. 48 C. J., p. 663, sec. 124. See, also, Louisville Joint Stock Land Bank v. Bank of Pembroke, 225 Ky. 375, 9 S. W. (2d) 113, wherein the facts involved were substantially the same as the facts of the present case. We think that case, as well as other authorities herein cited, is conclusive of the case at bar.

It follows from what has been said that the Bank is entitled to a first lien on the land or the proceeds thereof in the sum of $198.24, the balance due it on the Williamson Company debt, and the remainder of the land or the proceeds of any sale thereof will be next applied to the payment of McNeely's debt, interest, and costs.

The judgment of the chancellor being in harmony with these views, it is affirmed.

The whole court sitting.