James E. CHANCE, Appellant,

v.

ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, Respondent.

No. 50416.

Supreme Court of Missouri,

Division No. 2.

April 12, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied May 10, 1965.

Anthony P. Nugent, Sr., Anthony P. Nugent, Jr., Richard F. Adams, Winger, Nugent, Rayburn & Adams, Kansas City, for appellant.

George L. Gordon, Sam D. Parker, Jack W. R. Headley, Joseph E. Stevens, Jr., Kansas City, for respondent.

STOCKARD, Commissioner.

In this suit for personal injuries under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., plaintiff sought damages in the amount of $150,000. The jury returned a verdict for defendant and plaintiff has appealed. The issues on this appeal do not require a detailed statement of the evidence.

On June 19, 1960, plaintiff was employed by defendant as a switchman in the Argen-

tine Switchyards in Kansas City, Kansas, at a place called the "bowl yard" where railroad cars from connecting lines were brought to be distributed to various tracks in the yard depending upon their destination. The procedure followed was for freight cars to be taken to the top or crest of a "hump" and cut loose and permitted to roll into the bowl yard. The speed of the freight cars was controlled by "retarders" regulated by defendant's employees in control towers, who also guided the cars onto the proper track by operating mechanically the switching process. Plaintiff had performed work at track 45, and then walked northward to track 56, where a line of cars was to be pulled out of the yard. On track 55 there were two gondola or hopper cars located at a place where there was a curve. Plaintiff was asked by some member of the crew on track 56 to locate and replace the "skate," a device to stop or prevent the movement of railroad cars. According to plaintiff, he then walked westward between tracks 55 and 56 to a point just past the first gondola car on track 55. He then saw the skate on the other side of track 56, and he stopped and turned around. He was facing southwest and "practically looking at the car" when he was struck by the first gondola car. He testified that at the time he was not touching or leaning against any car, and he was not in the coupling area between the cars, but was "approximately eight inches or so" distant from the side of the car. Although he was looking at the gondola car he did not see it swing outward or sideways. Plaintiff's theory is that the first gondola car was struck by a freight car which had been routed onto track 55, and because of the excessive speed of the freight car at the time it struck the east end of the gondola car, the west end of the car was caused to swing outward or sideways and strike him. Defendant's evidence established that the two gondola cars were loaded with sand weighing about 75 tons each. The freight car was loaded with flour weighing about 55 to 60 tons. When coming down off the hump and coupling into the standing gondola cars at a speed of four miles an hour, with a skate on the far end of the gondola cars, the freight car would cause the gondola cars to move about 20 to 25 feet. Defendant also introduced evidence that the maximum lateral movement of gondola cars is about two inches, and if they moved sideways or swung out as much as eight inches they would derail. Photographs of a gondola car show that at each end it is narrower in width by about four or five inches, with this narrowing extending back from each end about five feet.

Instruction No. 1, plaintiff's verdict directing instruction, was as follows:

"The court instructs the jury that if you find and believe from the evidence that the plaintiff, Jim Chance, was in the employ of the defendant on June 19, 1960, and that on that day he was working as a switchman handling freight cars in the Bowl Yard of the defendant at the Argentine Yards in Kansas City, Kansas, and was working below and West of the so-called hump, and that as a part of his regular duties he was in a position on the curve between track 55 and track 56 and West of the 42nd Street Viaduct and that he was then and there violently struck by a hopper car standing on track 55 when it was struck by a car or cars which defendant had caused and permitted to roll off the hump Westward on track 55 at a speed in excess of that allowed by the defendant's rules to-wit four (4) miles per hour, and at an excessive and dangerous rate of speed, and if you further find that, in so causing and permitting said car or cars to roll at such speed off the hump on track 55 and to strike the hopper car standing on track 55, the defendant failed to exercise ordinary care and was negligent and that plaintiff was injured as a direct and proximate result of said negligence, then your verdict must be in favor of the plaintiff and against the defendant."

Defendant offered and the trial court gave, Instruction No. 7 which was as follows:

"The court instructs the jury that if you find and believe from the evidence that plaintiff was struck and injured by the movement of a car standing on Track 55 when cars standing on said Track 55 were moved by reason of another car coming off the hump and coupling into them, and if you further find that a speed of four miles per hour was a reasonable and proper speed for a car to so come off said hump and couple into said cars, and that a car so coming off said hump at a speed of four miles per hour and coupling onto said cars standing on said Track 55, would have caused said cars on Track 55 to move, and if you further find and believe that plaintiff was required to know the operating rules of defendant and that one of said rules required plaintiff to expect a movement of engines or cars on any track at any time in either direction, and if you further find that plaintiff placed himself in a position where he would have been so struck and injured by the movement of said cars on Track 55 caused by the coupling of a car coming off the hump at a speed of four miles per hour, then your verdict will be for the defendant, and this is true even though you may find and believe that said car coming off said hump was moving at a speed greater than four miles per hour."

Plaintiff challenges this instruction by his Point II in his brief which, with the numbers in brackets added, was in its entirety as follows: "The court erred in giving instruction No. 7 at defendant's request and over plaintiff's objections in that said instruction [1] required no finding that plaintiff's acts were negligent, [2] failed to exclude defendant's negligence, [3] was contrary to the law, [4] did not require the jury to find it was the duty of defendant to exercise ordinary care, [5] required

no finding of proximate cause and [6] was contradictory and confusing."

Plaintiff's Instruction No. 1 does not hypothesize where he contends he was in relation to the gondola car which struck him except that "he was in a position on the curve between track 55 and track 56." Under this submission he could have been sufficiently in the coupling opening between the two gondola cars so that he would have been struck by the forward movement, or he could have been standing next to one of them. Therefore, this instruction is consistent with the factual contention of plaintiff that he was standing next to a car, and also with the factual contention of defendant that the gondola car could not have hit him unless he was standing in line with the forward movement of the car. Plaintiff's submission of negligence on the part of defendant is limited by the instruction to a contention that defendant negligently permitted or caused the freight car to roll off the hump "at a speed in excess of that allowed by the defendant's rules to-wit four (4) miles an hour, * * *." In other words, by this instruction plaintiff admits that a speed of four miles an hour, or less, of the freight car would not constitute negligence on the part of defendant. Whether or not defendant may or may not have been negligent in some other respect, plaintiff voluntarily limited his submission of negligence on the part of defendant to permitting the freight car to travel on track 55 at a speed in excess of four miles an hour, and that this negligence was a proximate cause of his injuries.

■ Defendant was entitled to meet the issues as formulated and submitted by plaintiff. Its position on this appeal is that it attempted to do this by Instruction No. 7, which it contends is a converse instruction of causation. In a converse instruction the defendant may submit either the exact converse of plaintiff's verdict directing instruction, Janssens v. Thompson, 360 Mo. 351, 228 S.W.2d 743, or the exact converse of any essential element of such instruction.

Liebow v. Jones Store Company, Mo., 303 S.W.2d 660, 662. Such a converse instruction does not require affirmative testimony in support of it. Kimbrough v. Chervitz, 353 Mo. 1154, 186 S.W.2d 461, 464. The defendant "may also submit facts in an instruction, the existence of which would disprove, that is controvert, one or more of the essential factual elements of plaintiff's case." Liebow v. Jones Store Co., supra. Converse instructions are not limited to an attempt to converse the submission of negligence, but may, as above stated, converse any essential element, such as injury, Schaefer v. Accardi, Mo., 315 S.W.2d 230, or causation, as attempted in this case. What defendant has done by its Instruction No. 7 is to hypothesize a set of facts, admittedly supported by evidence, which if found by the jury would authorize a finding by the jury that the only negligence charged by plaintiff to have been committed by defendant was not a proximate cause of the injuries plaintiff received. The rationale of some cases under the Federal Employers' Liability Act in respect to the inference of negligence on the part of a defendant may be considered to be strained, but an action under the act is based on negligence, and it must be negligence which is a proximate cause of plaintiff's injuries for which he seeks damages.

We shall now examine separately each of the contentions made by plaintiff in his point wherein he challenges Instruction No. 7. An instruction conversing causation, or any other essential element of plaintiff's submission in the case, need not require a finding by the jury that [1] "plaintiff's acts were negligent." This would inject contributory negligence on the part of plaintiff, and of course would be improper in this case. Neither is it necessary that an instruction conversing causation [2] "exclude defendant's negligence." Of course, it must exclude defendant's negligence as a proximate cause of plaintiff's injuries, but Instruction No. 7 does that. Contentions [3] and [6] that the instruction "was contrary to the law" and "contradic-

tory and confusing" are so general and indefinite that they present nothing for appellate review. Domijan v. Harp, Mo., 340 S.W.2d 728; O'Brien v. City of St. Louis, Mo., 355 S.W.2d 904, 908; Civil Rule 83.05 (e), V.A.M.R. Contention [4] is without merit because a converse instruction need not require the jury to find that defendant had the duty to exercise ordinary care, or whatever degree of care is ordinarily imposed on the defendant. Plaintiff's verdict directing instruction covers this submission. It is not clear what is intended by contention [5]. Defendant's theory and submission is that its negligence, if any, was not a proximate cause of plaintiff's injury, and that is the result of the findings required by Instruction No. 7. Defendant certainly is not required in an instruction conversing causation to require a finding of causation. We necessarily conclude that there is no merit to any of the various contentions made by plaintiff in his point challenging Instruction No. 7.

From this examination of each contention made by plaintiff in his point, it is obvious that there is no contention, directly or by inference, that he objects to it on the basis that it injects contributory negligence as a defense to an action under the Federal Employers' Liability Act. In fact, the complaint expressly made is that it does *not* require a finding that plaintiff was contributorily negligent. To retain its jury verdict defendant is required only to refute those objections properly and adequately presented by plaintiff. He is not required to defend against possible contentions not advanced by the appealing party. In addition, absent impelling circumstances, see Reyburn v. Spires, Mo., 364 S.W.2d 589, an appellate court should rule a case only on the issues presented by the parties, and should not convict a trial court of committing error when the contention of error was not presented to it in a motion for new trial and then preserved for appellate review. However, contrary to the specific assignment in his point, plaintiff argues in his brief that Instruction No. 7 injected

contributory negligence as a complete defense, and pursuant to Civil Rule 79.04, V.A.M.R., we shall examine this issue to determine whether we should exercise the discretionary review permitted by the rule.

In plaintiff's argument we find this contention: "[I]t is extremely clear in reading the entire instruction that the defendant has availed himself of contributory negligence as a complete defense by the last clause of the instruction, to-wit: 'and this is true even though you may find and believe that said car coming off said hump was moving at a speed greater than four miles per hour.'" We fail to see how this clause injects contributory negligence of the plaintiff as a defense. It pertains to acts or conduct of the defendant, not of the plaintiff. Although plaintiff does not so contend, it might be argued that the hypothesization that "plaintiff placed himself in a position where he would have been so struck and injured by the movement of said cars on track 55" impliedly injected contributory negligence on his part, but the instruction does not require or call for a determination by the jury of negligence on the part of plaintiff, and it does not authorize a verdict for defendant on the basis that this act of the plaintiff constituted negligence. We think Instruction No. 7 is too wordy, but its deficiency is in poor draftsmanship; not in substance. Any jury of reasonable understanding would conclude from this instruction that if plaintiff would have been struck and injured by the gondola car if the freight car which struck it had been going only four miles an hour, which the jury was required to find was a reasonable speed and which plaintiff admitted by his Instruction No. 1 would not have been a negligent speed, then the fact that the freight car was permitted by defendant to roll at a greater speed, the only negligence plaintiff has elected to charge against defendant, would not have been a proximate cause of plaintiff's injuries. The jury was not required to make this finding but was authorized to do so based on its evaluation of the evidence. If plaintiff thought the instruction, because of its unnecessary wording, injected contributory negligence on his part as a defense, he did not so advise the trial court at the time the instruction was given, he did not so state in his assignment of errors in his motion for new trial, and he did not advise opposing counsel by making that contention in a point in his brief. In fact, as previously mentioned, his point contains an assertion to the contrary. He now makes the contention only by an argument in his brief unrelated to any point, and then in his argument he limits his contention to a phrase of an instruction which refers only to acts of the defendant, and which could not pertain to contributory negligence on his part. This is not a situation which calls for any further discretionary review on our part by reason of the provisions of Civil Rule 79.04, V.A.M.R. However, as previously noted, while the instruction contains unnecessary wording, it does not submit any acts of the plaintiff as constituting negligence, and it does not authorize a finding for defendant on the basis of contributory negligence.

Plaintiff also contends that the court erred in excluding evidence offered by plaintiff "to the effect that the railroad car involved in the accident was moving at 'an excessive' rate of speed." The question asked the witness on deposition was this: "Well, how fast would you say that car or cars, whichever you say it was, a car or cars, how fast would say it or they were going?" The answer was permitted to be read to the jury except this phrase: "they were going an excessive rate of speed." Defendant objected to the above phrase because it was a conclusion.

A person, when qualified, may be permitted to testify concerning the speed of a vehicle based on his observations, Brown v. Alton R. Co., 236 Mo.App. 26, 151 S.W.2d 727, but in this case the witness admitted that he was not a good judge of speed. However, here the witness was not giving his estimate of the speed of the car, but when admittedly not a good

judge of speed purported to state his conclusion as to whether the speed of the freight car was "excessive." This was improper for the reason assigned in defendant's objection. It would have been the conclusion of the witness of the ultimate issue before the jury from an unqualified witness. See comparable situations in Trowbridge v. Fleming, Mo., 269 S.W. 610; Elms v. Kansas City Public Service Company, Mo., 335 S.W.2d 26. We note also that when the trial court sustained the objection it suggested, in answer to counsel's contention that the answer was admissible in evidence, that counsel for plaintiff "show me a case" which so held, and counsel stated he would "have a trial brief" for the court, and that the case he was relying on was "by the Supreme Court of the United States." The court then said: "I will reserve ruling on that question and we will read it later." As far as shown by the record no trial brief was submitted, but the record does show that the court later refused to permit the answer to be read to the jury. The cases cited to this court are all Missouri cases and are all distinguishable. No prejudicial error occurred.

■ The final point of plaintiff is that "Pleading, proof and instructing as to defendant railroad's Rule 'N' violated the plaintiff's constitutional rights to equal protection of the laws and was an unjust and unwarranted deprivation of plaintiff's property rights without due process of law." In addition to the fact that this point does not comply with Civil Rule 83.05(e), V.A.M.R., plaintiff does not have a point in his brief that the trial court erred in refusing to strike from defendant's answer the reference to Rule N, and the record indicates that no such motion was made. Neither does plaintiff have a point in his brief that the court erroneously permitted proof of the contents of the Rule. We find no express mention of the Rule in any instruction, and there is no point in plaintiff's brief that any instruction erroneously referred to the Rule. Finally, there is no reference whatever in plaintiff's motion for new trial

to any constitutional question, and for that reason any such issue is not preserved for appellate review. Witt v. City of Webster Groves, Mo., 383 S.W.2d 723; State ex rel. Williamson v. County Court of Barry County, Mo., 363 S.W.2d 691.

The judgment is affirmed.

BARRETT and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.