**TITLE INSURANCE CORPORATION OF ST. LOUIS, a Corporation, Plaintiff-Respondent,**

v.

**UNITED STATES of America et al., Defendants-Appellants.**

No. 32906.

St. Louis Court of Appeals.

Missouri.

Sept. 17, 1968.

Motion for Rehearing and for Transfer to Supreme Court Denied Oct. 24, 1968.

Application to Transfer Denied Dec. 9, 1968.

Veryl L. Riddle, U. S. Atty., Harold F. Fullwood, Asst. U. S. Atty., St. Louis, Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Robert J. Campbell, Attys., Dept. of Justice, Washington, D. C., for defendants-appellants.

Dubail, Judge & Kilker, William C. Maier, St. Louis, for plaintiff-respondent.

BRUCE NORMILE, Special Judge.

This is an appeal from the summary judgment of the Circuit Court of St. Louis County entered on February 23, 1967. The original action was one begun by Respondent, Title Insurance Corporation of St. Louis to foreclose a deed of trust on real property located at 7223 Creveling Drive, University City, St. Louis County, Missouri.

There is no dispute between the parties concerning the facts. On July 23, 1951, Sylvia and Irving Federbush executed a promissory note in favor of Arthur Leussler in the principal amount of $20,000.00 secured by a deed of trust on the Creveling Drive property. The deed of trust was recorded on that day.

On February 5, 1952, the United States filed and recorded a lien against the Federbushes and the Creveling Drive property in the amount of $72,415.60.

On April 20, 1955, the Federbushes refinanced their mortgage with Leussler by executing new promissory notes aggregating $23,000.00 secured by the same Creveling Drive property. At this time there was an outstanding balance on the original 1951 loan of principal of $11,750 and interest for a total amount due of $14,938.17. Leussler had recorded notice of the prior

tax lien of the United States at the time of loaning the additional money.

On November 29, 1955, the Federbushes executed a promissory note in the amount of $25,000.00 in favor of Rachel Taslichkey, which was secured by a deed of trust dated November 29, 1955, and recorded December 20, 1955 in St. Louis County. The Trustee was one Burnett Schwartz and the Successor-Trustee was Robert Landsman. Taslichkey, Schwartz and Landsman were joined as Defendants in this lawsuit but did not file pleadings, nor did they appear at the time of trail for the hearing on the Motion for Summary Judgment.

By December 23, 1963, the Federbushes had repaid $11,250.00 on the 1955 notes held by Leussler and there was a total unpaid balance of principal interest and interest then due of $12,608.43. On that date, Leussler assigned all his rights as holder of the 1955 note to Respondent, St. Louis Title Insurance Company.

Title Insurance Company thereafter instituted foreclosure proceedings on February 24, 1964. On October 21, 1965, Respondent and Appellant appeared for the trial of the matter. Defendants Taslichkey, Schwartz and Landsman defaulted. On that date, the Court ordered the real estate to be sold but reserved the questions of the interests and of the priority and rank of the outstanding liens. The sale took place on November 30, 1965 and made the sum of $25,070.61 available to satisfy the above-described liens. This sum was paid into the Registry of the Court.

On May 16, 1966, the Title Insurance Corporation moved for a summary judgment claiming priority over all other claimants. United States by counter-motion agreed there was no dispute on the facts and the only question of determination was one of law. Thereafter, on February 27, 1967, the trial court sustained the motion of plaintiff for a summary judgment in favor of Title Insurance Corporation in the sum of $11,750.00 with interest from October 20, 1962, to not exceed the sum of $14,938.17.

Thereafter, on March 27, 1967, the Court on its own motion entered a memorandum ordering that the Order of February 23rd was to be specifically designated as a final judgment for the purposes of appeal within the meaning of Section 512.020, RSMo 1959, V.A.M.S.

Appellant concedes that Respondent was equitably subrogated to all of the rights of the holder of the original note secured by a deed of trust executed in 1951 up to the amount of $14,988.17.

The first issue presented on this appeal is raised by the motion of Respondent, Title Insurance Corporation to dismiss the appeal of Defendants-Appellants, United States of America, et al., on the ground that the appeal is one from an interlocutory order which has not disposed of all issues and is, therefore, premature. In its brief, Respondent correctly submits that the Order did not dispose of the claim of the United States to the remainder of the funds on deposit in the Registry of the court after satisfaction of Respondent's lien, nor did it make any disposition of any rights of the defendants Schwartz, Taslichkey, and Landsman under the deed of trust of November 29, 1955. Respondent then submits that the judgment is not a final one.

Generally speaking, a final appealable judgment is one which disposes of all parties and all issues in the case. Bennett v. Wood, Mo., 239 S.W.2d 325. However, Civil Rule 82.06, V.A.M.R. provides in part as follows:

"When a separate trial is had before the court without a jury of claims arising out of the same transactions, occurrences or subject matter as the other claims stated or joined in the case the judgment entered shall not be deemed a final judgment for purposes of appeal within the meaning of Section 512.020, Revised Statutes of Missouri, *unless specifically so designated* by the court in the judg-

ment entered. * * *" (Emphasis added.)

In effect, the hearing on the Respondent's motion for a summary judgment was a separate trial before the court without a jury and the trial court has designated this judgment as a final one under this rule. The judgment entered does make a complete determination as to the rights of the Respondent as against all the other parties and as rendered does establish the priority of the Respondent's claim. The conflicting claims of the remaining parties may be resolved in a separate hearing. The trial court and not the reviewing court has the discretion to designate this order as a "final judgment" and it has properly done so here. Dotson v. E. W. Bacharach, Inc., Mo., 325 S.W.2d 737 (2, 3); Pizzo v. Pizzo, 365 Mo. 1224, 295 S.W.2d 377, 380–381 (4, 5); Stith v. St. Louis Public Service Co., 363 Mo. 442, 251 S.W.2d 693, 34 A.L.R.2d 972.

Respondent also urges that no alleged error has been preserved for Appellate review since a motion for a new trial was not filed in the trial court. Respondent cites Civil Rule 79.03, which so provides. However, Rule 79.03 further provides that a motion for new trial is not required in cases involving:

"* * * questions as to sufficiency of the pleadings to state a claim or defense, questions of the sufficiency of the evidence to support the judgment in cases tried as provided by Rule 73.01, questions authorized by Rule 72.02 to be presented in a motion for judgment and questions authorized by Rule 73.01(c) to be presented in a motion to amend the judgment and opinion. * * *"

The duty of the Appellate Court, in reviewing summary judgment cases, is the equivalent of reviewing court tried or equity cases and eventually resolving the question of the sufficiency of evidence to support the summary judgment and finally, if necessary, of entering such judgment as

a trial court ought to have given. State, On Information of Reardon v. Mueller, Mo., 388 S.W.2d 53.

Although the facts were agreed in the instant case, the question of sufficiency of those facts or of that evidence to support the judgment is presented. The question as to the sufficiency of the pleadings to state the claim or defense is also presented. The question to be determined is one which could be presented by a motion for a directed verdict at the close of the evidence under Civil Rule 72.02. The question also appears to be one authorized under Rule 73.01(c) in a motion to amend the judgment and opinion.

The case of Morris v. I.C.T. Insurance Company, Mo., 316 S.W.2d 636, involved a motion to require the third party Superintendent of the Division of Insurance to satisfy the plaintiff-respondent's judgment against the defendant insurance company out of funds deposited with the Division of Insurance. In overruling the Superintendent's motion to dismiss the appeal, the court stated: "* * * Nor was a motion for a new trial necessary to preserve for appellate review the allegations of error presented by appellant, since we construe the issues presented to be within the exceptions mentioned in Supreme Court Rule 3.23 (now Rule 79.03), including 'questions of jurisdiction over the subject matter, questions as to the sufficiency of the pleadings to state a claim or defense, (and) questions of the sufficiency of the evidence to support the judgment * * *.'" (Although the Morris case did not involve a motion for summary judgment, it is analogous to this case.)

In support of its position that a motion for new trial was required, Respondent also cited the cases of Brawner v. Brawner, Mo., 327 S.W.2d 808 (1959); Mueller v. Mueller, Mo., 318 S.W.2d 365; and Chance v. Atchison, Topeka & Sante Fe Railroad Co., Mo., 389 S.W.2d 774. The first two cases involved points first raised on appeal which had not been presented or

decided by the trial court. Here the issue now presented is identical to the question considered and decided by trial court. The *Chance* case is not analogous since it was a jury-tried case where one issue (involving injection of contributory negligence in an instruction) presented on appeal had not been presented in the motion for new trial, which was filed and considered in the trial court; nor was this issue briefed in the Appellate court but only raised in argument. In both *Mueller* and *Chance*, the Appellate courts did, in fact, consider the points raised.

The Respondent's motion to dismiss the appeal will be overruled.

Respondent and Appellant agree that Respondent was equitably subrogated to all of the rights of the holder of the original note secured by the deed of trust in 1951 up to the sum of $14,938.17.

The central question presented by this appeal concerns the application of the payments made by the debtor and thus the priority of competing liens. The question is whether the payments subsequent to April 20, 1955 by the Federbushes in the sum of $11,250.00 should be applied first to the payment of the unpaid portion of the 1951 indebtedness or whether they should be applied first to the payment of the additional monies loaned in the refinancing of April, 1955. If the payments are applied against the unpaid portion of the 1951 indebtedness, the result would be that Respondent Title Insurance Corporation would only have a first lien of $3,688.17, against the proceeds of the sale of the security. If application of the payments of $11,250.00 is first applied to the additional sums loaned in 1955 in the amount of $8,061.83, the result would be that Respondent would have a first lien on the sum of $11,750.00 with interest of five and one-half per cent (5½%) from October 20, 1962. The trial court adopted the second method of application of payments.

■ "The general rule in regard to application of payments is that the debtor has the right to specify the account to which a payment will be applied. If the debtor fails to so specify, the creditor may make the application, and if neither debtor nor creditor exercises his prerogative, then the law will make the application as right and justice requires, usually to the credit of the oldest unsecured account." Herrmann v. Daffin, Mo.App., 302 S.W.2d 313.

■ In the instant case, neither the debtor nor the creditor made application of the payment as between the 1951 loan and the 1955 loan which were both represented by the refinancing notes and refinancing deed of trust of April 20, 1955. It was then necessary for the trial court to make application of the payments "as right and justice required."

Missouri courts have previously construed such situations.

The case of Short v. White, 234 Mo. App. 499, 133 S.W.2d 1039, involved a suit on a $1,250.00 unsecured note. The evidence showed other loans between the parties and various payments between them. In discussing the application of payments, the Court said: "And where no directions have been given by the debtor and no application has been made by the creditor, and where some obligations are secured and others unsecured, the court will apply the payment to the more precarious obligations as against others which are secured." In Price v. Merritt, 55 Mo.App. 640, it is stated: "Where no application is made by the parties the court properly applied credit to that portion of the account which was not lienable and for which there was no security."

Appellant cites Section 394, Restatement of the Law, Contracts, which provides for application to be made to an unsecured or precarious matured debt rather than to one that is secured or certain of payment. In comment to Section 394, the Restatement sets out the rule:

"(b) Where neither the debtor nor the creditor exercises his power of applica-

tion, a payment is, under most circumstances, applied in the manner most favorable to the creditor * * *."

In this case, it is obvious that the most precarious obligation is represented by the proceeds of the additional amounts loaned in 1955 in excess of 1951 unpaid balance. It is also clear that the additional funds loaned in 1955 were not so well secured since their lien was inferior to those of the Appellant United States whereas the lien of the 1951 funds was superior. In following the rule of these cases and of the Restatement, it is necessary that the payments be applied first against the least secured portions of the 1955 loan; and this is what was done by the trial court.

However, Appellant United States urges that the instant case involves "competing lienors" rather than a "debtor-creditor" dispute; and that special protection should be given to the rights of a third party. This position is contrary to that taken by the United States in the case of Pipola v. Chicco and the United States of America, 2 Cir., 274 F.2d 909. In Pipola the U.S. agreed at time of trial that equitable subrogation was proper to the extent of the original first lien and accrued interest as of the trial date, even though payments had been made on the refinancing note (which also represented inferior liens) subsequent to the refinancing.

In support of this position, Appellant particularly cites the case of Louisville Joint Stock Land Bank v. McNeely, 267 Ky. 425, 102 S.W.2d 389. That case did apply the payments made by the debtor against that part of the note secured by the first lien rather than against that part of the note secured by the third lien so as to protect the interest of the competing second lienor. The court stated: "If the bank should be allowed to credit the payments made by McChesney (the debtor) on the $2,600 note to that part of the note over and above the Williamson and Co. debt (the first lien) and then assert its first lien to the extent of the Williamson and Co. debt, it would be equivalent to holding the bank's

lien superior to McNeely's (second) lien, when in fact the bank's mortgage was second to that of McNeely except to Williamson and Co. debt." However, this case is clearly contrary to the Missouri cases of Herrmann v. Daffin, Short v. White, Price v. Merritt above cited.

In fact, many of the Missouri cases do consider third party situations. The case of Case Threshing Machine Company v. Matthews, 188 Mo.App. 429, 174 S.W. 198, was one where the debtor gave four notes by date of June 15, 1906, all secured by a chattel mortgage. The notes due October 1, 1906 and October 1, 1907, also had sureties on them while the notes due October 1, 1908 and October 1, 1909 had no sureties. After default, the property was sold and proceeds of the sale were applied to the last two notes. Suit was then brought on the first two notes against the debtor and the surety. The appeal was by the surety only. In this case, the surety was a third party somewhat in the position of a competing lienor and the rules of "right and justice" would be equally applicable as in the instant case. Nonetheless, the judgment against the third party surety was affirmed and the payments were applied first to the unsecured amounts.

The case of Michigan Commercial Insurance Co. v. Rodger, Mo.App., 191 S.W. 1066, also involved a third party case. In that case, the defendant as agent for the plaintiff insurance company owed some premiums which were unsecured and other premiums which were secured by a bond signed by the defendant surety company. The agent made payments to the plaintiff insurance company but neither applied them to specific accounts. The court then made the application of payments and applied them to the unsecured debt. The third party surety company remained bound.

Appellant cites the case of Gulf Oil Corporation v. Texas City Refining, Inc., 4 Cir., 218 F.2d 196. In that case, Gulf Oil contracted with defendant for a mutual exchange of oil at designated locations. De-

fendant assigned its rights and duties to a third party and the court found that a novation was effected. At the time of the novation, 9,222 barrels of oil were owed to Gulf under the contract. The third party continued the agreement with Gulf and delivered over 24,000 barrels of oil to Gulf thereafter. The third party received larger amounts from Gulf than were delivered. The third party then became bankrupt owing oil to Gulf. Gulf then sued the defendant. The trial in Appellate Court found for defendant on three grounds: First, on the ground that there had been a novation which released defendant from all obligations; second, on the basis of equitable estoppel because of plaintiff's actions and representations relating to the transaction which need not be detailed here; and thirdly, on the ground that payments on a running account are applied by the law first to the oldest items of the account. The *Gulf* case does not, therefore, apply to the situation involved here where application of payments must be made to different accounts differently secured. It might be noted that the Gulf case did not, in fact, involve competing lienors.

As an alternative, Appellant urges that the $11,250.00 in payments made by the Federbushes after April 20, 1955 should be prorated between the unpaid balance of the original 1951 debt secured by the Federbushes and the additional money made available in the refinancing in April 1955 secured by the third lien. This would reduce Respondent's first lien on the proceeds of the sale of the property by a pro rata application of the payments made.

To support this position, appellant cites the cases of Federal Land Bank of Columbia v. Bank of Lenox, 192 Ga. 543, 16 S.E. 2d 9, 1951, and Weh v. Weh, 63 N.J.Super. 238, 164 A.2d 508. Both cases agreed that the equities of third parties should be given consideration in the application of payment cases and provided for a proration of payments.

The *Lenox* case involved a situation where the original owner of real property repurchased it from the senior mortgagee after foreclosure had been had under a mortgage of the original owner. The court held, in effect, that the doctrine of after-acquired title applied to mortgages as well as to deeds, and that although the second mortgagee had been divested on the foreclosure the lien of the second mortgagee remained as a first lien on the land as to the original owner and his privies, except to the extent of the purchase money mortgage. The mortgage securing the purchase money also secured additional funds which were found to be inferior to the divested second mortgage. The owner made payments to the holder of the purchase money mortgage. No special applications of payments was made by the parties as to the purchase money or other funds advanced and secured by the purchase money mortgage. The Appellate Court held that the payments had to be applied pro rata to the best secured purchase money debt and to the least secured non-purchase money debt. There was a vigorous dissent on both the issue relating to the revesting of the original second mortgage and the issue as to application of payments. On the question of application of payments, the dissenting opinion stated: "The fallacy of the majority ruling is found in its treatment of the question as if the fund were subject to some lien or some claim of the Bank of Lenox (original second mortgagee). That money was the private property of Medford, and he had a perfect right voluntarily to apply it to the legitimate and legal claims of the Federal Land Bank. The Bank of Lenox had no title to or interest in any part of that fund. That Bank made no effort to collect any part of that money for application to its claim against Medford, but stood idly by while the Federal Land Bank, diligently and energetically looking after its own interests and affairs, made the collection from its debtor." It might also be noted that the majority decision was based on Ga.Code Section 20–1006,

that in the absence of direction of the parties, application of payments must be made "in such manner as is reasonable and equitable, both as to parties and third persons." Thus, the statutes may have required a different application where third parties, other than the debtor and creditor, were involved. In any event, it is clear that the Court was trying to deal with the over-all equities in making application. Nonetheless, the result in *Lenox* leads to the creation of different rights between the debtor and creditor where a third party is involved and where a third party is involved. In so doing, it causes uncertainties as to the status of the rights among all the parties. The result of the case is contrary to the Missouri law on application of payments and to the result reached here under that law.

The case of Weh v. Weh, supra, involved priority of a U.S. tax lien against a husband as against the lien of the divorced wife for payments made by the wife on the husband's behalf on a mortgage to commonly held property. However, the court found as a fact that the debtor husband in making payments intended to make application of the payments on a pro rata basis to the various accounts both secured and unsecured that he owed to the wife. The husband had this right under the general rule. The case is thus not applicable here.

The separate summary judgment in the trial court in favor of Respondent Title Insurance Corporation of America is affirmed.

ANDERSON, P. J., and WILLIAM H. BILLINGS, Special Judge, concur.

RUDDY and WOLFE, JJ., not participating.