CLAY, Circuit Judge,
dissenting.
The majority erroneously concludes that the certificate of acknowledgment aceom- *365 panying the Wilsons’ mortgage fails to comply with applicable Kentucky law and that, consequently, Plaintiff, Trustee Beverly Burden, may avoid the mortgage obligation. Contrary to the majority’s argument, the record demonstrates that the acknowledgment complied with § 382.160 of the Kentucky Revised Statutes, the mortgage was validly acknowledged, and Plaintiff cannot avoid the mortgage obligation. Therefore, I respectfully dissent.
By way of background, on May 8, 2001, Samuel and Liza Wilson financed a $65,741 loan with Defendant CIT secured by a lien against their Kentucky home. In the presence of a notary, they executed a mortgage to secure the loan. The signature page of the mortgage documents reads as follows:
[[Image here]]

(Id.)

On January 17, 2005, the Wilsons filed for Chapter 13 bankruptcy, and Plaintiff was appointed as Trustee of the Wilsons’ estate. As Trustee, Plaintiff filed the instant case in the United States Bankruptcy Court for the Eastern District of Kentucky. Pursuant to 11 U.S.C. § 544(a)(3), “a bankruptcy trustee is considered a bona fide purchaser of the debtor’s real estate and may therefore avoid certain obligations placed on the property that are voidable under state law.” In re Cook, 457 F.3d 561, 566 (6th Cir.2006). To be valid under Kentucky law, a mortgage must be “acknowledged or proved according to law and lodged for record.” Ky.Rev.Stat. Ann. § 382.270. Thus, if the Wilsons’ mortgage was not properly “acknowledged” under Kentucky law, the estate may avoid any obligations created by that mortgage.
IN WITNESS WHEREOF, the undersigned (has-have) signed this instrument on the date and year first above written.
[[Image here]]
(J.A. 12.) Immediately below this signature block appears the certificate of acknowledgment, which states:
The foregoing instrument was acknowledged before me this 08 day of MAY, 2001.
Kentucky law provides two separate frameworks for creating a valid certificate of acknowledgment. The first is set forth in Kentucky’s Uniform Recognition of Acknowledgments Act (“URAA”). Relevant to the issue presented in this case, § 423.130 requires that, for the certificate to be valid, “[t]he person taking an acknowledgment” must certify:
(1) The person acknowledging appeared before him and acknowledged he executed the instrument; and
(2) The person acknowledging was known to the person taking the acknowledgment or that the person taking the acknowledgment had satisfactory evidence that the person acknowledging was the person described in and who executed the instrument.
Ky.Rev.Stat. Ann. § 423.130. In addition to the URAA, Chapter 382, governing con *366 veyances and encumbrances, sets forth certain requirements for certificates of acknowledgment. Specifically, § 382.160 provides that, “[w]here the acknowledgment ... is taken by an officer of this state or an officer residing out of state, he may simply certify that it was acknowledged before him, and when it was done.” Ky.Rev.Stat. Ann. § 382.160(1). Therefore, if the certificate accompanying the Wilsons’ mortgage complies with either of these statutes, the acknowledgment is valid.
The record establishes that the acknowledgment complies with the requirements set forth dn § 382.160. The certificate of acknowledgment accompanying the Wil-sons’ mortgage states that the “foregoing instrument” was “acknowledged before [the notary]” on the eighth day of May, thus satisfying the statute’s requirement that “the officer ... may simply certify that it was acknowledged before him, and when it was done.” Ky.Rev.Stat. Ann. § 382.160. Because the acknowledgment complies with § 382.160, the mortgage was validly acknowledged and therefore recordable. Accordingly, the mortgage provided notice to the Trustee under § 382.270, and Plaintiff cannot avoid the mortgage obligation.
Attempting to avoid this self-evident legal conclusion, the majority finds that the mortgage is invalid under § 382.160. The majority reasons that, because § 382.160 “does not refer to a notary,” it applies “only when an officer of a state is performing an acknowledgment.” Op. ¶40. The majority then states that “nothing in that statute or related statutes ... defines a notary as an officer of a state.” Id. However, numerous longstanding decisions from the Kentucky courts have recognized that a notary is a “public officer” or “officer of the state.” See Redden v. Kentucky, 339 S.W.2d 447, 448 (Ky.1960) (finding that a notary public is a type of public officer); Love v. Duncan, 256 S.W.2d 498, 501 (Ky.1953) (“[N]otaries public are universally regarded as officers.”); Huffaker v. Nat’l Bank of Monticello, 75 Ky. 287 (Ky.1876) (“The notary being an officer of this state, his official signature is all that is required ....”); see also New Madrid Realty & Inv. Co. v. Kirby, 226 Ky. 557, 11 S.W.2d 429, 430 (1928) (concluding that, because the acknowledgment indicated that a “notary public” took the acknowledgment, “the title of the officer taking the acknowledgment plainly appears on the mortgage”); Holland v. Stubblefield, 182 Ky. 282, 206 S.W. 459, 461 (1918) (concluding that “a notary who held himself out as such ... was a de facto officer” and that the acknowledgment taken before him was valid because “the contracting parties did not know of the officer’s disability”).
Despite the clear understanding of Kentucky courts that a notary is an officer, the majority attempts to argue that these cases are inapplicable. However, the grounds on which the majority attempts to distinguish the cases are baseless. Unable to find any other way to discredit the Kentucky Supreme Court’s clear statement that a “notary [is] an officer of this state,” Huffaker, 75 Ky. 287, the majority contends, without explanation, that the Kentucky Supreme Court’s decision is irrelevant because it was decided before the enactment of § 382.160. However, nothing in § 382.160 suggests that the Kentucky legislature intended to overturn the general principle that a notary public is an officer under Kentucky law.
With respect to the cases decided after the enactment of § 382.160, the majority argues they do not apply to this case because they “involve facts in contexts that are clearly distinguishable from those presented in this case.” Op. ¶ 40. However, any factual distinctions are irrelevant; *367 they in no way undermine or limit the general principle that a notary public is an “officer of this state.” In addition, the majority offers no support for its contention that Kentucky excludes notaries from the more general category of state officers. Therefore, the majority’s contention that a notary is not an “officer of this state” for purposes of § 382.160 is clearly contrary to Kentucky law.
By reaching the erroneous conclusion that the certificate of acknowledgment fails to comply with § 382.160, the majority attempts to avoid the issue of whether the provisions of Chapter 382 apply to this case, as well as the question of whether the URAA provides the exclusive method of creating a valid certificate of acknowledgment. Nonetheless, the majority offers several reasons as to why it believes that Chapter 382 should not apply to this case, all of which lack merit.
First, the majority rejects the Creditors’ reliance on Chapter 382 because the relevant provisions “only refer to deeds” and therefore do not “govern the recording of ... mortgages.” Op. ¶ 36. While the term “mortgage” is not present in the text of § 382.160 or similar provisions, such as § 382.130(1), Kentucky courts have applied earlier versions of these statutes when confronted with the question of whether a mortgage was recordable. See, e.g., Starr Piano Co. v. Petrey, 168 Ky. 530, 182 S.W. 624, 625-26 (1916) (applying section 501— the predecessor statute to 382.130(1) — to determine whether a mortgage was properly recorded); see also State Bank of Stearns v. Stephens, 265 Ky. 615, 97 S.W.2d 553, 557 (1936) (citing section 501 for the rule that a mortgage could not be legally lodged for record until it was acknowledged). Therefore, to the extent the majority attempts to dismiss Chapter 382 as relevant only to deeds, the majority is clearly at odds with well-established Kentucky law.
In addition, the majority reasons that Chapter 382 should not apply to this case because other courts that “have reviewed similar attempts to avoid a mortgage based on a defective notary acknowledgment have identified and applied § 423.130 as the controlling statute.” Op. ¶ 36. The majority concedes, however, that “there is admittedly no indication in these cases” that the parties advanced the argument that § 382.160 applied. Id. Without evidence that a court rejected Chapter 382 as inapplicable, the fact that these courts applied § 423.130 does not support a conclusion that § 382.160 cannot provide a valid method of proving notarial acts.
The majority also addresses the Creditors’ argument that § 423.170 demonstrates that the Kentucky legislature intended for the URAA to provide an additional method of proving notarial acts, rather than the exclusive method. Section 423.170 provides:
A notarial act performed prior to July 1, 1970, is not affected by KRS 423.110 to 423.190. KRS 423.110 to 423.190 provide an additional method of proving notarial acts. Nothing in KRS 423.110 to 423.190 diminishes or invalidates the recognition accorded to notarial acts by other laws or regulations of this state.
Ky.Rev.Stat. Ann. § 423.170. In evaluating the Creditors’ argument, the majority finds § 423.170 to be ambiguous with respect to whether § 423.170 precludes the application of Chapter 382. However, § 423.170 specifically indicates that the URAA does not replace existing methods of proving notarial acts, but provides an “additional” method.
The Kentucky legislature evidenced its intent through § 423.170 to maintain existing statutes, such as those set forth in Chapter 382, as permissible methods of *368 proving the acknowledgment of deeds, mortgages, and other instruments. While Kentucky courts have not addressed the impact of § 423.170 on seemingly conflicting statutes, courts in other states that have adopted the URAA “have consistently come to the conclusion that the uniform act creates an alternative means of authentication.” Apsey v. Mem’l Hosp., 477 Mich. 120, 730 N.W.2d 695, 702 n. 9 (2007) (discussing Rumph v. Lester Land Co., 205 Ark. 1147, 172 S.W.2d 916 (1943), which concluded that a pre-existing statute “was merely a system of acknowledgement [sic] that was an alternative to” the URAA and that, as a result, “[t]wo ways are open: (1) the old way; or (2) the way under [the uniform act]. Either way reaches the same goal: i.e., the right to be recorded”). Accordingly, there is no basis for the majority’s contention that § 423.170 is ambiguous.
In addition to arguing that the certifí-cate of acknowledgment failed to comply with § 382.160, the majority asserts that the acknowledgment is invalid under § 423.130. Because Kentucky law amply demonstrates that the mortgage was validly acknowledged pursuant to § 382.160, it is unnecessary to address whether the certificate of acknowledgment complied with § 423.130.[1] However, it should be noted that the majority’s interpretation of § 423.130 represents an inappropriately technical and misleading reading of that statute, particularly in light of the Kentucky Supreme Court’s recent discussion of the purpose of a certificate of acknowledgment:
The certificate of acknowledgment is evidence of the acknowledgment itself, which in its technical legal sense is a formal declaration before a proper officer that an instrument is the act or deed of the person executing it, or, to put it more expressly, a formal declaration of the genuineness of an instrument in writing made by a person executing it ... before a competent court or officer[ ] in order to establish the validity of such instrument or entitle it to be admitted in evidence or be recorded.... As such, an acknowledgment is nothing more than a verification that a document was executed.
Matthews v. Commonwealth, 163 S.W.3d 11, 24 (Ky.2005) (internal quotation marks omitted) (footnotes omitted). Thus, the purpose of requiring a certificate of acknowledgment is to ensure the validity of an instrument. While reciting the name of the person acknowledging execution of the instrument is an important requirement to guarantee the integrity of the instrument, there is no dispute in this case that the Wilsons are the ones who acknowledged execution of the mortgage; the certificate of acknowledgment appears directly below their signatures. Further, the acknowledgment references the “foregoing instrument,” which could only refer to the mortgage document the Wilsons signed directly above the certificate of acknowledgment.
*369 Therefore, this case does not present a situation where a subsequent purchaser would be “left to wonder who appeared before the notary ... to acknowledge their signatures.” In re Biggs, 377 F.3d 515, 519 (6th Cir.2004). Under the circumstances, “no intelligent person could have been misled by the ... certificate,” as “[a]ny person of common understanding would at once know and understand that the named [instrument]” referred to the mortgage. Louisville Joint Stock Land Bank v. McNeely, 267 Ky. 425, 102 S.W.2d 389, 392 (1937).[2] Accordingly, a finding that the Wilsons’ mortgage was not properly recorded solely because the certificate of acknowledgment fails to restate the names of the persons whose signatures are being acknowledged constitutes an overly technical and arcane reading of Kentucky law. The majority attempts to justify its conclusion by relying on case law that addresses the validity of instruments and acknowledgments distinct in presentation from those in this case, which involves a signature to an instrument followed immediately by a statement that the instrument was acknowledged. Allowing a trustee to avoid the mortgage obligation under these circumstances does nothing to fulfill the purposes of the acknowledgment requirement — protecting the validity of the title system and preventing fraud.
Instead of protecting the integrity of this and similar transactions, the majority has exalted form over substance and actually has made it more difficult for parties to such transactions to receive the legal protections that Kentucky law has sought to insure over many years. Thankfully, inasmuch as this Court is not the final arbiter or interpreter of Kentucky law, neither the Kentucky legislature nor the Kentucky courts are bound by the majority’s ill-advised and legally erroneous conclusions. See Ohio ex rel. Skaggs v. Brunner, 549 F.3d 468, 472 (6th Cir.2008) (“No federal court has the final say on what [Kentucky] law means.”).
Because the majority erroneously concludes that the certificate of acknowledgment accompanying the Wilsons’ mortgage failed to comply with Kentucky law, I respectfully dissent from the majority’s conclusion that Plaintiff may avoid the mortgage obligation.

. As a result, it also is unnecessary to address the majority’s reliance on this Court’s unpublished decision in Rogan v. America's Wholesale Lender (In Re Vance), 99 Fed.Appx. 25 (6th Cir.2004), for its conclusions regarding the proper interpretation of § 423.130.
In addition, to the extent that the majority relies on bankruptcy court cases to support its interpretation of Kentucky law, such reliance is misplaced. Although a panel of this Court must follow a prior panel's interpretation of state law under the principles of stare decisis, see Koch v. Koch Indus., Inc., 203 F.3d 1202, 1231 (10th Cir.2000), this Court is not obligated to follow a bankruptcy court's interpretation of state law, Brochett v. Spokane Arcades, Inc., 472 U.S. 491, 500, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) (noting that federal courts "surely have the authority to differ with the lower federal courts as to the meaning of a state statute”).

. In rejecting the Creditors’ reliance on McNeely, Op. ¶ 43, the majority fails to recognize McNeely's rejection of overly technical interpretations of the requirements for creating a valid certificate of acknowledgment. The court in McNeely emphasized that, despite the existence of a "more precise" or "better form” alternative, where “no intelligent person could have been misled" by the imperfect certificate, a court should not invalidate the certificate. See 102 S.W.2d at 392.