BEECH CREEK COAL CO. v. JONES.

Court of Appeals of Kentucky.

June 19, 1953.

Rehearing Denied Dec. 11, 1953.

Moore & Morrow, Madisonville, for appellant.

E. M. Nichols, Madisonville, for appellee.

MOREMEN, Justice.

Appellant, Beech Creek Coal Company, filed a petition in which it was alleged that it was "the owner and entitled to possession of" certain field books, traverse calculation sheets and base or hardback maps which were in the possession of appellee, Paul M. Jones. Mr. Jones was a mining engineer who prepared the material just described while engaged as a contract engineer for the appellant company.

It appears from the record that there are two general classifications of engineers; one works exclusively for a single company; the other accepts employment from more than one and is compensated by fees based upon the amount of time consumed in performing his engineering work. He generally works out of a private office.

Appellee, by answer as amended, pleaded that he and appellant had entered into a verbal contract whereby the appellee agreed, for a consideration, to make certain surveys of appellant's mining property and to furnish it with certain engineering data and information, all of which the appellee performed according to the agreement. It was further averred, however, that the data, maps, charts, information and other property described in the petition belonged to appellee by right and by the custom and usage of the engineering profession; that the custom was observed so uniformly and was of such notoriety that it was known or should have been known to appellant.

At the trial and at the conclusion of the introduction of evidence by both parties, the court peremptorily instructed the jury to find for appellee.

The appellant's claim to ownership was based upon the following factors: (1) it caused the articles in question to be produced; (2) it paid for all the cost incident to their production; (3) it sometimes actually supervised the production of the articles; and (4) it had, at all times, either actual or constructive possession of the same.

In its petition for "claim and delivery," appellant contented itself with the time-honored allegation that it was "the owner and entitled to the possession of certain maps and engineering data." The source of its ownership was not disclosed but the petition is in the form suggested under item No. 77 of the Civil Code of Practice Forms in Carroll's Kentucky Code, 10th Edition. We believe it is sufficient when the pleader alleges that he is the "owner." We have so held in connection with actions for the possession of real estate. Newman's Pleading and Practice, 3rd Edition, Section 773. However, when the word "owner" is used, the precise meaning of the word, when not modified by other words, depends upon and may be defined by the circumstances surrounding the subject matter and the parties. Prudential Insurance Company of America v. Kraschel, 222 Iowa 128, 226 N.W. 550, and Bare v. Cole, 220 Iowa 338, 260 N.W. 338.

We must, therefore, look to the circumstances of the employment and determine whether a verbal contract, such as this one, implies absolute ownership in the party who caused the property to be created and who paid for the services which brought the property into existence and, further, whether the facts surrounding the formation of this employment agreement gave implication of a promise or duty by the engineer to deliver the property to the mining

company when the employment relationship was terminated.

■ We are concerned here with a contract for personal services which was to last for an indefinite period. The very nature of this close relationship of the parties presupposes that it was formed with maximum trust and goodwill between the participants and, in such cases, the details are usually left to the sufficient days of the future. It would have been impractical, if not impossible, to anticipate various phases of the agreement which might some time arise and, in such contracts, the law implies that each party will be governed by rules of reasonable and sensible conduct. We are all familiar with the laconic sales letter which offers by brief description to sell certain items and which is crystallized into a definite written contract by the simple addition to the letter, by the buyer, of such words as "I accept," or even "agreed." The courts have had no difficulty in construing such an acceptance to mean "I will pay," even though no express words to that effect are used.

■ So we believe that a contract includes not only the promises made in express words, but also includes all provisions which might have been expressed and which are indispensable to effectuate the intentions of the parties, keeping in mind, of course, the circumstances under which the contract is made. New York Casualty Company v. Sinclair Refining Company, 10 Cir., 108 F.2d 65, Corbin on Contracts, Section 562. This rule was recognized in Warfield Natural Gas Company v. Allen, 248 Ky. 646, 59 S.W.2d 534, 536, 91 A.L.R. 890:

"It is a familiar principle in the law of contracts that, in the absence of specification of duties and obligations intended to be assumed, the law will imply an agreement to do and perform those things that according to reason and justice the parties should do in order to carry out the purpose for which the contract was made. Hum-
phreys v. Central Kentucky Natural Gas Company, 190 Ky. 733, 229 S.W. 117, 21 A.L.R. 664."

If we look again at the circumstances surrounding this contract of employment, we find that the mining company was attempting, through the services of appellee, to obtain information which would aid and guide it in the mining operation and would also supply it with data and maps required by the mandates of KRS 352.450. This statute requires that the operator shall annually make or cause to be made an accurate map to scale of the workings of the mine and he must file a true copy of the map with the chief of the Department of Mines and Minerals. He must thereafter annually file additional maps which show the progress of the mining work. Subsection (3) states this: "The chief may, if he deems it advisable, require any operator or superintendent to furnish a map other than those required in subsections (1) and (2), and the operator or superintendent shall immediately comply with the requirement."

■ The property here involved included: (a) the field books which contained the original recording of the information obtained by the engineer in the field and were made in the field as the mining operation progressed; (b) the traverse calculation sheets which contained the mathematical conversion of the field notes into a form suitable to be used in plotting base maps; and (c) the base or hardback maps which graphically disclosed the extent of the mining operation and which were based upon the information and calculations found in the material which we have listed under (a) and (b). We have no difficulty in concluding that the foregoing material is vitally necessary for the company to own and possess in order to fulfil its obligation to the Department of Mines and Minerals, and that the parties were well aware of the need of the company to own and possess, not only the base maps, but also the data which is necessary to prove the accuracy of those maps and furnish the bases for any other maps which the

Department of Mines and Minerals might require under subsection (3) of KRS 352.-450.

When the contract of employment arose under such circumstances, which were known to both parties, an obligation also arose, not from the express words used, but from the implication of the nature of things to be done and, thus, the appellant proved its right of ownership and possession.

When we return to the rule quoted above from the Warfield Natural Gas Company case, it seems certain that the law should imply an agreement in this case to do and perform those things according to reason and justice the parties should do in order to carry out the purpose for which the contract was made, even though the parties did not specifically discuss this matter at the time the oral contract of employment was consummated.

It was remarked above that appellee in defense of his position had pleaded that it was an established custom, which was in existence in the engineering profession at the time of the making of the agreement, that such property belonged to the engineer and this issue raised by the pleading was met at the trial by testimony offered by each party. The witnesses disagreed directly concerning whether such a custom had been established. Those offered for appellant were of the opinion that the property belonged to the mining company and those offered by appellee testified that such data were the property of the engineer. From all the evidence produced, we can only· conclude that a variable practice had been engaged in in the mining industry. Sometimes the engineer kept the material; other times it was treated as belonging to the operator. In Aulich v. Craigmyle, 248 Ky. 676, 59 S.W.2d 560, 562, it was said:

"To establish a custom it is not enough to prove the act is frequently done; it must be both alleged and proven to be certain, general, uni-

form, and recognized. Where it is so alleged and proven, it is a fair presumption that the parties, on entering into their engagement, do it with reference to the custom, and agree that their rights and responsibilities shall be determined by it. A practice to arise to the dignity of a custom so as to enter into and form a part of a contract must possess those elements of certainty, generality, fixedness, and uniformity, as are recognized by the law as essential to constitute a custom. A loose, variable custom or discretionary practice does not arise to the· dignity of a custom so as to control the rights of the parties to a contract. If the usage leaves some material element to the right of exercising an option, or discretion, of one of the parties, it does not constitute a custom."

Ordinarily, the question presented by such conflict in the testimony of witnesses is addressed to a properly instructed jury but, here, we do not feel that the record contains proof of a quality sufficient to require such a submission.

A custom or usage must also be reasonable. As is said in 25 C.J.S., Custom and Usages, § 13: "A usage is reasonable, it has been stated, when it is such that, if incorporated into the contract and is applied to the subject matter, it would be a just and appropriate stipulation not calculated to throw heavy and disproportionate burdens on either party." The usage attempted to be established in this case does not satisfy the requirements of the foregoing test because, .as we have pointed out above, reason and justice demand that appellant receive those things which he bought and paid for.

We are of opinion that the circuit court should have directed a verdict for the appellant and the case is, therefore, reversed for proceedings in accordance with this opinion.