## JONES v. LINKES et al.

Court of Appeals of Kentucky.

May 7, 1954.

John M. Perkins, Somerset, Edwin R. Denney, Mt. Vernon, for appellant.

Fritz Krueger, Somerset, for appellees.

STEWART, Judge.

Plaintiff below and appellant here moves for an appeal from a judgment on a directed verdict in favor of defendants on the ground that the lower court erroneously denied him the right to recover the sum of $692 by misconstruing the terms of his brokerage contract with defendants.

The uncontradicted facts out of which this litigation grew are that on December 29, 1950, appellees, Don Linkes and Clifford Randall, doing business as "Linkes Hardwood Company," with the assistance of appellant, H. C. Jones, as their broker, negotiated a contract with Oxie and Grover

Blanton to purchase a large boundary of white oak timber in Harlan County.

Upon the date of the execution of the contract and as provided by it appellees advanced $50,000 to the Blantons, $25,000 of which amount was to be used for the purpose of paying for the first 500 trees to be cut and the remaining $25,000 thereof was to "be used for the purpose of paying for the last five hundred trees to be cut on said tracts of land." Furthermore, the contract provided: "It is agreed that after the first five hundred trees have been cut and worked, which consumes the sum of $25,000, then second parties for the rest of the cutting will pay first parties the sum of $50 per tree for all of the trees counted and cut." In other words, the remaining $25,000 was to be held in reserve to guarantee the removal of the last 500 trees and the contract stipulated that, in event appellees "should quit this contract or should fail to observe its provisions," the advance payment above made should be forfeited as liquidated damages.

For his services in bringing the sellers and purchasers together, appellees executed and delivered the following written memorandum to appellant on the same day:

"Due H. C. Jones 3% on timber bought from Blanton Harlan Co. To be paid when timber is taken up and payment is made to Mr. Blanton. Pay to him or his heirs.

(Signed) "Linkes Hardwood Co."

Seven days later appellant received appellees' check for $1,500, which was his commission for 3% of $50,000.

Appellees began lumbering operations and, after cutting enough trees to absorb the first $25,000 of the $50,000 advanced, they began making payments at the rate of $50 per tree. On March 12, 1951, they paid $10,000 to the Blantons on this basis and remitted to appellant his commission of $300 thereon. On April 16th and May 1st, respectively, the Blantons received payments of $10,300 and $11,950 for trees, but no commission was forwarded to appellant on these amounts. Again, on December 29,

1951, the Blantons were paid $4,150. Upon this latter sum appellant received a commission of only $100, which was $24.50 short of 3% of this payment.

After cutting 1228 trees appellees abandoned the contract, thereby losing their right to cut the last 500 trees as well as forfeiting the $25,000 paid by them for the timber.

After appellees had refused to settle with appellant for commissions he alleged were due him upon the amounts they paid the Blantons on April 16th, May 1st and December 1st, a total of $692, he instituted this action. At the close of appellant's evidence, the trial court as we have stated directed a verdict for appellees.

Appellees' contention is that under his contract appellant was to receive his commission only when the timber was "taken up," whereas appellant insists the agreement means that he became entitled to his commission when the timber was "paid for."

 We think we can reach a correct solution of the problem before us by following a well-known legal formula, which is that in construing a contract we must seek out the intention of the parties and ascertain how they meant the agreement to operate when they entered into it. One guide in determining such intention is to look to the acts of the parties in the execution and fulfillment of the agreement. When we apply this test in the case at bar, it is plain appellees interpreted their contract with appellant to mean they should compensate him, not at the time the trees were "taken up" but at the time the trees were "paid for," because upon their payment of $25,000 in advance for the last 500 trees, which were never cut, they nevertheless sent appellant his commission on this sum. This manner of dealing with appellant is convincing proof that appellees disregarded "taken up" as the event controlling their payment of commissions to him.

 Moreover, under appellees' theory of their defense to appellant's claim, as they

have argued it in their brief, they must still lose. Appellees contend they owe nothing to appellant except for trees that had been actually cut; yet the commissions for which appellant brought this suit are based entirely upon sums paid to the Blantons for trees that had been cut. Therefore, it is apparent that even should we adopt the construction placed upon the brokerage contract by appellees themselves, appellant is still entitled to recover his claim.

We conclude the trial court erred in directing a verdict for appellees.

Wherefore, the motion for an appeal is sustained, the appeal is granted and the judgment is reversed for proceedings consistent with this opinion.