**Dan GIBBS, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Dec. 10, 1954.

Kash C. Williams, Jackson, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Chief Justice.

Dan Gibbs appeals from a judgment of the Breathitt Circuit Court sentencing him to serve one year in the penitentiary upon a jury conviction of issuing an alleged cold and worthless check to one Amos Graham in violation of KRS 434.070.

The grounds urged for reversal are: (a) Under the evidence appellant was entitled to a peremptory instruction directing the jury to find him not guilty; and (b) the verdict of the jury was so flagrantly against the evidence as to indicate it was the result of prejudice. We believe the first contention is determinative of this appeal, and, for this reason, we deem it unnecessary to consider the assignment of error noted as (b).

According to the evidence of Amos Graham, appellant on August 20, 1951, purchased from him a pair of mules for $150 and gave him the check for the agreed price postdated to September 20, 1951, drawn on Peoples State Bank and Trust Company of Winchester, Kentucky. Graham claims he did not notice the check was dated a month ahead, for the reason that appellant did not call his attention to this fact. He kept the check about a week or ten days before he presented it to the bank for payment, and on two other occasions thereafter he said he attempted to cash it, but payment was refused each time because of lack of sufficient funds to cover it.

Five to seven months after obtaining the check, he accepted a payment of $30 on it and, subsequent to that, he received from appellant 800 feet of lumber valued at $24 and credited this amount as a payment. After he had been given the $30 in cash but before the lot of lumber had been turned over to him, Graham stated he had a conversation with appellant about settling the debt, and the latter told him he did not then have the money and asked him to hold the check until he could pay it. This Graham agreed to do. Nothing further having been paid by appellant, Graham procured an indictment against him almost two years after the check was issued.

Appellant's version of what occurred with respect to the check transaction is thus given in his own words: "I went up and looked at the mules and I said, 'Amos I need the mules but I don't have the money and I couldn't take them' Amos said he would sell them to me on credit and so we agreed on the price and I said, 'Well, I will give you a check and date it thirty days ahead of time' and I give him the check and that's the way we traded." He further testified that on September 20, 1951, he had sufficient funds on deposit in the bank on which the check was drawn to fully pay it.

Tim Gibbs, a witness for appellant who said he was present at the time the mules were bought, corroborated appellant's testimony that the mules were bought on credit and that a postdated check was given for their purchase price. He testified: "* * they (Dan Gibbs and Amos Graham) agreed on the price and Dan said, 'I will fill you out a check and date it ahead' and Amos said, 'that will be alright' * * *."

The Commonwealth in rebuttal introduced two witnesses who testified under proper admonition of the court that appellant's reputation for morality was bad in the community of his residence.

One way to ascertain how the parties meant for a contract to operate when they entered into it is to look to their acts in the execution and fulfillment of it. Jones v. Linkes, Ky., 267 S.W.2d 936. The

check on its face indicates it was issued as a promissory note. Furthermore, the subsequent dealings between appellant and the complaining witness, Graham, as shown by the evidence, clearly disclose that the obligation was to be satisfied at a distant date. Or, to state the same idea differently, the proof unerringly points to the fact that the check was given by appellant to Graham as evidence of his indebtedness to Graham and as his written promise to pay the debt one month from date. Graham admits he was paid $30 and was given lumber worth $24, both of which sums he applied toward the payment of the check; and nowhere does the record indicate he treated the check otherwise than as a deferred debt. We therefore conclude that Graham regarded the check as a note.

The evidence in this case is plain beyond doubt that appellant did not issue to Graham a cold check within the meaning of KRS 434.070; instead, he executed and delivered to him what amounted to a note that turned out to be in part uncollectible. Where the drawer of an instrument promises to pay a sum certain on a future date, the "cold check law" does not apply if the drawer fails to pay the obligation at maturity. Such is this case, and appellant was entitled to a directed verdict of not guilty.

Wherefore, the judgment is reversed with directions that it be set aside, and if at a subsequent trial the evidence be substantially the same, the indictment will be dismissed.