Philmore BOWEN, Appellant,

v.

Alpha FRAZIER, Appellee.

Court of Appeals of Kentucky.

June 6, 1969.

As Modified on Denial of Rehearing
Sept. 26, 1969.

Ronald G. Polly, Combs & Polly, Whitesburg, for appellant.

F. Byrd Hogg, Whitesburg, for appellee.

PALMORE, Judge.

The appellant, Bowen, brought this action against the appellee, Alpha Frazier, to quiet his title to a strip of land and to enjoin Alpha from interfering with his use and enjoyment of it. Alpha denied his ownership and by counterclaim asserted that she owned the property and asked, in the alternative, that a deed she had received from their common grantor be reformed so as to cover the disputed area. The chancellor found Alpha to be the owner, and Bowen appeals.

In 1947 S. T. Frazier, the common grantor, who was Alpha's father and Bow-en's grandfather, owned a tract of land at the west end of Main Street in Whitesburg. It was bounded on the north by Main Street, on the east by a tract owned by Bowen's mother, Sarah Bowen, and on the south and west by the North Fork of Kentucky River. The transactions pertinent to this controversy were as follows:

A. December 30, 1947: S. T. Frazier conveyed to Alpha a house and lot fronting 62 feet on Main Street adjacent to Sarah Bowen's west line and extending back that width in a southerly direction with the Bowen line to a depth of *110 feet*.

B. July 20, 1954: S. T. Frazier conveyed to Philmore Bowen a tract described as beginning at a point on Main Street which is 18 (or 19) feet west of the lot theretofore conveyed to Alpha, and running thence west to the river, south and east with the river to the southwest corner of Sarah Bowen, north with the Sarah Bowen line *"to the Alpha Frazier line and a set stone* on the corner of Alpha Frazier, and Sarah Bowen property, thence in a westerly direction eighty (80) feet *to a set stone* on the line of S. T. Frazier," and thence north with said line to the beginning. (Emphasis added.)

(This leaves an 18 or 19-foot strip fronting on Main Street and running southward adjacent to Alpha's west line.)

C. July 22, 1954: S. T. Frazier conveyed to Alpha a house and lot fronting *62* feet on Main Street adjacent to Sarah Bowen's west line and extending back that width in a southerly direction with the Sarah Bowen line to a depth of *148 feet*.

(This is the same property conveyed to Alpha in 1947 except that the description calls for a depth of 148 feet instead of 110 feet. Alpha testified that it was a deed of correction. The 38-foot difference is the origin and subject of the dispute.)

D. August 9, 1955: Philmore Bowen conveyed to Billy Wayne Wright a lot described as beginning at a set stone at Al-

pha's southeast corner and running thence 80 feet westwardly to a set stone, thence southwardly to the river, thence with the river 80 feet to Sarah Bowen, and thence northwardly with Sarah Bowen to the beginning.

E. July 26, 1958: S. T. Frazier conveyed to Alpha a strip described as beginning at her lower (northwest) corner on Main Street and running thence down the street toward the river a distance of 19 feet to the upper corner of Phil Bowen, thence back with Bowen's line a distance of *148 feet* to *a concrete or stone marker,* thence in a straight line to the "back lower corner" of the grantee, and thence with the line of the grantee to the beginning.

(This is the 18 or 19-foot strip noted above under C.)

F. July 21, 1961: Philmore Bowen conveyed to Paul Kirkland the property beginning at Alpha's northwest corner on Main Street and running thence to the river, with the river to the southwest corner of Sarah Bowen, north with Sarah's line to the Alpha Frazier line *"and a set stone"* on the corner of Alpha and Sarah, west 80 feet *"to a set stone"* on the S. T. Frazier line, and north to the beginning, but excepting the lot theretofore conveyed by Philmore Bowen to Billy Wayne Wright (D). (Emphasis added.)

G. October 26, 1962: Billy Wayne Wright reconveyed to Philmore Bowen the lot above described in D.

Bowen received his deed (B) from S. T. Frazier two days before S. T. Frazier gave Alpha the "deed of correction" (C). Bowen's deed (B) calls for a set stone at Alpha's southeast corner, Alpha's south line, and a set stone at the southwest corner of the 18 or 19-foot strip as his boundary. Evidently there were no set stones in existence at the time, and Alpha's 1947 deed (A) called for a depth of 110 feet from Main Street. Bowen therefore claims his boundary ran along a line 110 feet from Main Street. Unquestionably this would be correct on the face of the record and

without any further evidence. We accept that proposition without the necessity of considering the authorities cited in his brief.

■ There was ample evidence, however, to justify the chancellor in finding that what appears on the face of these instruments did not reflect the understanding of the parties, and that the line 110 feet from Main Street was not the line that was supposed to be marked by set stones. The deeds made by S. T. Frazier in July of 1954 (B and C) were but two days apart, and although Bowen's was first in time, Alpha's deed clearly indicates that S. T. Frazier, the grantor in both, considered the line to be 148 feet from Main Street. The instruments being virtually contemporaneous, it is extremely unlikely that he would have placed Alpha's back line 148 feet from Main Street unless he thought that was the line called for in his deed to Bowen.

If the chancellor had found Bowen to have been an innocent purchaser who in reliance upon the record had believed his boundary ran along the line 110 feet from Main Street, we think his position would be unassailable, but there was evidence to the contrary. We shall not undertake to recapitulate all of it, but certain items will serve to illustrate. For one thing, the engineers employed by Bowen to survey the property in connection with this dispute found a set stone at the southwest corner of the 18 or 19-foot strip 148 feet from Main Street, at Kirkland's corner (the end of the 80-foot call in Kirkland's deed as above described in F). Kirkland testified that when Bowen showed him the property just prior to the 1961 conveyance (F) he pointed out this stone as marking the boundary and said his aunt (Alpha) owned the property from that point to Main Street. Though it was shown that Kirkland also was engaged in a lawsuit against Bowen, and may thus have been a prejudiced witness, his credibility was a matter for the trial court to judge.

Alpha testified that the stone in question first appeared at about the time of the conveyance from Bowen to Billy Wayne Wright (D). Theretofore, she said, a locust fence post had stood in the same line (148 feet from Main Street), but an employe of Wright accidentally knocked it down one day while plowing, and Bowen afterwards told her he had replaced it with a stone. Wright recalled having knocked down such a post and that it was "in line with this stone marker, or block, or whatever it was." He said the stone was shown to him by Bowen a week or so after he had bought his lot (D), but that it had moved toward the river since then. Most significant is that Wright located the stone and the post as being on his line and that this line marked the top of a slope toward the river. Other witnesses located the beginning of the slope along the line 148 feet from Main Street. Wright was uncertain as to distances and dimensions, but when read in connection with Alpha's evidence his testimony has corroborative substance.

Bowen himself acknowledged that he placed the stone in 1956 or 1957 after he had sold the lot to Wright (D), but his version was that it had been moved afterward. He gave the location of the fence post as in the line 110 feet from Main Street.

Alpha testified also that she had gardened the area in dispute for a number of years without question from Bowen, but we need not detail the evidence further. Suffice it to say that it was enough to warrant the conclusion that at the time of the 1954 deeds (B and C) all the parties understood the line to be 148 feet from Main Street. That being so, equity recognizes as done that which ought to have been done, and the judgment has the practical effect of confirming it.

The judgment is affirmed.

All concur.