## Bankers Trust Co. of California v. Eaborn

*John P. Liekar Jr.,* for plaintiff.

*Jerrold S. Kulback,* for defendant Presidential Financial Corp.

*Daniel L. Sautel,* for defendants Eaborn.

*T. Lawrence Palmer,* for defendants Commw. of Pa. and Pa. Dept. of Revenue.

FRIEDMAN, *J.,* June 27, 2006—Plaintiff has filed a motion for summary judgment in the captioned action to quiet title. The motion gives rise to two questions, one involving whether the subordination agreement at issue contains a latent ambiguity which requires parol evidence to explain, the other involving whether or not a lender owes any duty of good faith to a prior lender who subordinated its lien to that of the later lender.

The undisputed facts are as follows: the Eaborns (guarantors) own an ongoing and apparently successful business. Over the years they guaranteed loans to the business, giving mortgages on their residence to plaintiff's predecessor, Ameriquest, and defendant Presidential Financial Corporation of Delaware Valley as security for the guaranty. The business loans were accomplished via factoring agreements whereby the business' accounts receivables were the primary security for what was effectively a line of credit.

The business' first factoring arrangement (at least for purposes of the instant motion) was with Presidential. At some point, the business decided to refinance its debt to Presidential by entering into a new factoring agreement with Ameriquest (later acquired by Bankers Trust, plaintiff herein). As part of the second lending arrangement, Ameriquest asked Presidential to subordinate its prior mortgage lien on the Eaborns' residence to the new lien of Ameriquest. Presidential agreed and after some nego-

tiations, a document, the subordination agreement at issue, was signed. The actual date of signing was after Ameriquest had closed the loan with the business.

In response to plaintiff's motion for summary judgment, Presidential filed an affidavit of its president, Robert J. Vanaman Jr., who had signed the subordination agreement. He says that, as is the custom in the money-lending industry, the maximum amount subordinated was $270,000, exclusive of interest, late fees, and attorney fees, none of which were expressly added to the principle amount of the Presidential loan to be subordinated, as would "typically" be the case. His affidavit does not attach any such typical form agreement, a deficiency that plaintiff argues fails to raise a disputed fact sufficient to defeat its motion.

Presidential also contends that Ameriquest had a duty to accept the partial payments proffered (by either the Eaborns or their business) instead of exercising its contractual right not to do so, thereby raising the debt guaranteed by the Eaborns far above the fair market value of their house. Eaborns join strongly in this aspect of Presidential's response. Defendants cite the Kentucky case of *Rainier v. Mount Sterling Nationwide Bank,* 812 S.W.2d 154 (Ky. 1991) in support of their contention that plaintiff, notwithstanding its contractual right to refuse partial payments from the Eaborns, had a duty *to Presidential* not to damage the security for *Presidential's* subordinate lien.

The Supreme Court of Kentucky, when faced with a factual situation very similar to the instant case, held as follows:

"We recognize the rule that, as between the two of them, a creditor receiving payments from his debtor,

without any direction as to their application, may apply them to any legal debt, secured or unsecured, which he holds against his debtor. *Straub v. Chemical Bank,* Ky. App., 608 S.W.2d 71 (1980). *But where a third-party creditor executes a subordination agreement in favor of said creditor, the latter has an implied duty under equitable principles to apply the payment it receives from the debtor in a manner which does not prejudice the third-party creditor's subordinated security interest.*" 812 S.W.2d at 157. (emphasis added)

In the instant case, by refusing to accept partial payments of the amount in default, plaintiff breached its implied duties of good faith and fair dealing both to Presidential (under the subrogation agreement) and to the Eaborns (under the mortgage agreement).

The court agrees with defendants that the Pennsylvania Supreme Court would probably follow the analysis of the Kentucky decision. There is no apparent business justification for plaintiff's refusal to accept partial payments and its insistence on only payments in full. Plaintiff's belief (expressed during oral argument on this motion) that acceptance of a *partial* payment could be viewed as a *full cure* of a default by the debtor seems to be illogical and unfounded. The court's review of Pennsylvania law reveals no basis for plaintiff's stated reason. In fact, the well-respected Pennsylvania treatise by Professor Kenneth E. Grey, *Mortgages in Pennsylvania* (2nd Ed.) states clearly to the contrary:

"A tender to the mortgagee-lender of considerably less than the full amount in default *does not effectuate a cure* or bring the mortgage current. Hence, the lender need

not initiate new foreclosure proceedings, but can simply reissue its writ of execution."

Here, of course, there has not been any writ of execution issued, nor has there even been a foreclosure action filed, so even the relatively minor cost of reissuing a writ is irrelevant to plaintiff's business reasons for not accepting partial tenders.

## CONCLUSION

Plaintiff is not entitled to summary judgment and the case must proceed to trial. Plaintiff will have to prove, inter alia, that Mr. Vanaman's signature on the letter of June 27, 2001 (Bates no. AMER000006) is *not* a forgery, as Mr. Vanaman contends. Plaintiff will also have to adduce sufficient evidence to prove there *was* a valid business reason for its refusal to accept partial payments of the amount in default. Presidential will also have the opportunity to prove the custom in the industry as described in Mr. Vanaman's affidavit. The Eaborns will have the opportunity to prove the times and amounts of any tenders they made to plaintiff.

See order filed herewith.

## ORDER

And now, to-wit, June 27, 2006, after consideration of plaintiff's motion for summary judgment and defendants' responses thereto, the motion is denied.