RENDERED: JULY 12, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0737-MR

MATT MINIARD                                                                    APPELLANT

v.
APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 17-CI-00481

ROBIN MINIARD, IN HIS CAPACITY
AS EXECUTOR OF THE ESTATE OF
RALPH E. MINIARD, JR.                                                          APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This is a second appeal related to the administration of the

Estate of Ralph E. Miniard, Jr. (the Estate). Former executor Matt Miniard (Matt)

has appealed from orders of the Perry Circuit Court requiring him to reimburse the

Estate for funds he used that were not related to administering the estate. We

affirm.

In the first appeal, this Court considered issues related to the enforcement of a settlement agreement and the removal of Matt as the executor. We shall use the factual background section of that opinion, which details the relevant facts that also impact the present appeal:

> The Appellant, Matt Miniard, as executor of the estate of Ralph E. Miniard Jr., seeks review of the Perry Circuit Court's May 1, 2019 order enforcing the parties' prior settlement agreement and removing Matt as executor of Ralph's estate in accordance with the agreed final judgment.[1] The Appellees are Robin Miniard, Chris Allex, Jessica Allex, and Joshua Miniard. Having reviewed the record and being otherwise sufficiently advised, we affirm.

> I. BACKGROUND

> Ralph had three sons during his life: Matt, John, and Robin. In 2011, Matt moved the Perry District Court to appoint a guardian for Ralph on the grounds of incompetency. In late 2013, the district court appointed Robin and John as co-guardians.[2] John later passed away, leaving Robin as Ralph's sole guardian.

> During the course of serving as Ralph's guardian, Robin determined that it was necessary to secure live-in caregivers to assist Ralph. Robin ultimately hired his cousin, William Douglas Miniard, and William's wife, Myrtle (collectively "the Cousins"), to assist Ralph. The Cousins reached an agreement with Robin that in exchange for caring for Ralph they would receive title to Ralph's home in Hazard after his death. Robin submitted

---

[1] As the parties have a common surname, for clarity, we refer to the individuals by their first names. (Footnote 1 in original.)

[2] Matt reportedly declined to serve as an appointed guardian for Ralph. (Footnote 2 in original.)

-2-

the parties' written agreement to the Perry District Court for approval; however, Ralph died on February 22, 2017, before the district court approved the agreement.

Ralph died testate, and his will was probated with the Perry District Court. Matt was appointed to serve as the executor of Ralph's estate in accordance with the will. A short time later, the Cousins filed a probate claim with the estate seeking title to the Hazard house on the basis of their prior agreement with Robin. As executor, Matt disallowed the Cousins' claim because the written agreement had never been approved by the district court. The Cousins then filed a probate claim against the estate for the value of the services they provided to Ralph prior to his death, which they claimed was approximately $308,000.00. As executor, Matt also disallowed this claim.

Next, the Cousins filed an action in the Perry Circuit Court pursuant to [Kentucky Revised Statutes (KRS)] 395.510 and KRS 395.515 seeking to compel settlement of Ralph's estate.[3] Therein, the Cousins alleged that there was a disputed issue with respect to their right to receive compensation from Ralph's estate and that Ralph's personal estate had insufficient assets to settle their claim (which they again alleged was over $308,000.00). They demanded that, if necessary, the circuit court order Ralph's real property sold to satisfy their claim. Matt, as executor of Ralph's estate, and Ralph's beneficiaries (Matt, Robin, Jessica, and Joshua)

---

[3] KRS 395.510(1) permits creditors, among others, to "bring an action in circuit court for the settlement of [an] estate" six months after the appointment of a personal representative. In turn, KRS 395.515 permits the circuit court to adjudicate any genuine issues concerning: (1) "the right of any creditor, beneficiary or heir-at-law to receive payment or distribution[;]" (2) "a correct and lawful settlement of the estate[;]" and/or (3) "a correct and lawful distribution of the assets[.]" Additionally, where the personal estate appears insufficient for the payment of all debts, the circuit court "may order the real property descended or devised to the heirs or devisees who may be parties to the action . . . to be sold for the payment of the residue of such debts." *Id*. (Footnote 4 in original.)

were named as defendants. A bench trial on the Cousins' claim was scheduled.

Prior to the bench trial, Robin, Jessica, and Joshua (the "Appellees") moved the circuit court to remove Matt as executor of the estate on the ground that Matt had acted improperly as executor to their detriment. According to Matt, his counsel did not receive a copy of the motion, and therefore, did not attend the September 14, 2018, hearing related thereto. Since Matt did not file a written response to the motion or appear at the hearing to voice an objection, it appeared to the circuit court that the motion was unopposed. Thus, the circuit court entered a written order granting the motion on September 24, 2018. Pursuant to the order, the circuit court named Robin the executor of Ralph's estate in place of Matt. On September 24, 2018, after Matt's counsel received a copy of the circuit court's order, he filed a motion to vacate, which he later supplemented with a memorandum of points and authorities. As will be explained in more detail below, the circuit court eventually vacated the September 24 order as part of the agreed final judgment submitted by the parties.

Before the bench trial commenced, the parties took part in a mediation at which they reached a global settlement of all claims and issues surrounding Ralph's estate. As part of the settlement, Matt, Robin, Jessica, and Joshua agreed to transfer the title to Ralph's house in Hazard to the Cousins to settle their creditors' claim against the estate. Additionally, Matt and the Appellees reached an agreement regarding final settlement and distribution of the estate's assets and Ralph's real property. Pursuant to the parties' agreement, Matt agreed to convey a set dollar amount to the Appellees and in return, the Appellees agreed to convey their interests in certain real property inherited from Ralph to Matt. The parties further agreed that Matt, as executor of Ralph's estate, would distribute to each beneficiary his or her proportionate share of the net estate. **The parties agreed**

-4-

**the Appellees would collectively receive two-thirds of the estate's liquid assets (bank balances) after payment of the estate's legitimate expenses with Matt to receive the final one-third as well as all the remaining assets of the estate. Matt was to remain executor so long as the above transfers and distributions occurred within the following 120 days. If they did not, Matt agreed that Robin would replace him as executor at which time Matt was to provide an accounting of his actions as executor**.

The parties advised the circuit court of the settlement. On the record, the parties conveyed the substance of their agreement to the circuit court and swore in open court that their participation in the agreement was voluntary. Thereafter, the circuit court directed the parties to prepare and file an agreed final judgment reflecting the substance of their settlement agreement. Although the parties had informed the circuit court of their agreement on October 19, 2018, for reasons that are not entirely clear from the record, the agreed final judgment submitted by the parties was not formally entered by the circuit court until April 5, 2019.[4]

Between the time the parties reached their agreement in October 2018 and entry of the agreed judgment in April 2019, several additional motions were filed with the circuit court. First, the Cousins filed a motion to compel the beneficiaries to convey a deed to the Hazard house to them as promised. The circuit court granted the Cousins' motion on January 31, 2019. **Next, on March 14, 2019, the Appellees moved the circuit court to compel Matt to comply with the agreed final judgment executed by the parties. This motion was**

---

[4] The last sentence of the judgment formally vacated the circuit court's prior order removing Matt as executor of Ralph's estate: "[T]he Order of this Court entered on September 24, 2018, replacing Robin Miniard for Matt Miniard as Executor of the Estate, is hereby vacated." (Record at 174.) (Footnote 8 in original.)

**filed after Matt had tendered the estate proceeds to the Appellees. Matt included a list of expenditures with the tendered proceeds which totaled $50,439.23. The Appellees questioned certain expenditures by Matt as executor and were reluctant to conclude the settlement without a more detailed accounting through which they could ascertain the correctness of Matt's tendered distributions and the legitimacy of the alleged expenses**.

According to Matt, after the motion had been filed, his counsel was told by counsel for the Appellees that they would hold off on the motion if Matt would provide documentation supporting the receipts and expenditures of the estate. Matt asserts that on the evening of Thursday, April 25, 2019, his counsel sent an email to counsel for the Appellees stating that Matt would provide the requested information thereby negating the need for the hearing, which was scheduled to take place the next morning. Believing he had addressed the matter with his Thursday evening email, Matt's counsel did not attend the Friday, April 26, 2019 hearing. However, counsel for the Appellees did not see the email until after the hearing had already taken place. Since Matt's counsel was not at the hearing to oppose the motion, the circuit court granted it, and a written order was entered by the circuit court on May 1, 2019. As part of the order, Matt was directed to make an itemized disclosure of all expenditures made from the estate while he served as the executor and to comply with the parties' agreement that Robin be named the executor after the expiration of 120 days. After the circuit court denied Matt's motion to set aside the order, he appealed to this Court.

*Miniard v. Miniard*, No. 2019-CA-1148-MR, 2022 WL 413999, at *1-3 (Ky. App.

Feb. 11, 2022) (emphasis added) (footnotes 3, 5, 6, 7, 9, and 10 omitted).

-6-

While this Court declined to address several issues Matt raised due to lack of preservation, it did consider, and reject, his argument that the circuit court lacked subject matter jurisdiction. It held that the circuit court "had the authority to enforce its own order by directing Matt to comply with the agreement" and "was simply enforcing the parties' contract 'for the purpose of settling the estate.'" *Id.* at *5 (quoting *McGuire v. Citizens Fidelity Bank & Trust Co.*, 805 S.W.2d 119, 121 (Ky. 1991)).

Upon remand, Robin moved to compel Matt to reimburse the Estate for expenditures that were made with Estate funds but were not claims against or liabilities of the Estate. The total amount sought was $28,151.56, and was comprised of funds used to pay tax bills and legal fees.

In response, Matt argued that the circuit court did not have original jurisdiction to grant the relief Robin requested. Rather, the district court had jurisdiction pursuant to KRS 24A.120 as the matter involved probate. This action had been started by two individuals to enforce a claim against the Estate that Matt had disallowed, and they had also sought settlement of the Estate and the sale of Ralph's real property if necessary, which brought the action into circuit court under an exception set forth in KRS 395.510 for creditor's rights. Those claims were resolved, and the original plaintiffs were no longer participating in the action. In the current motion, Robin was seeking reimbursement for expenses that had not

previously been put into issue, and, therefore, his motion did not fit into the exception to KRS 395.510. Matt went on to argue that the disputed disbursements benefited the Estate. Finally, he argued that while Robin served as Ralph's guardian before his death, he had inappropriately transferred to himself four parcels of real property in Hazard without adequate consideration. Therefore, Robin should be removed as executor of the Estate.

On November 1, 2022, the court entered an order ruling on Robin's motion. The court did not address Matt's jurisdictional argument or that Robin should be removed; it only looked at the merits of each item sought to be reimbursed. The court found that all of the funds were subject to reimbursement, with the exception of 51% of the tax bills. Therefore, it ordered Matt to reimburse the Estate in the amount of $16,779.26 for expenditures Matt made from Estate funds that did not benefit the Estate and "from which he personally benefitted."

Matt moved the court to vacate or amend the order, disputing the amount he was ordered to reimburse. He did not discuss the court's failure to address his jurisdictional argument. In response, Robin disputed Matt's motion and also sought additional reimbursement based upon county clerk records. Robin requested that the court amend the order to require Matt to reimburse the Estate in the amount of $19,274.62 for real estate taxes and $5,290.00 for attorney fees. In reply, Matt disputed the amount he should have to repay.

The court entered an order and judgment on April 12, 2023, addressing the tax bills and the legal fees. The court found Matt breached his fiduciary duty to the Estate by paying any portion of the 2013, 2014, and 2015 Fayette County property tax bills from Estate assets. It then ordered him to reimburse the Estate a total of $24,779.61, which included property tax bills, cash, repairs to a water truck, and legal fees of $4,500.00.

Matt filed another motion to vacate or amend the order and judgment related to the amount of property taxes and tax fees he had to reimburse. He asserted that he only owed $3,752.35 to the Estate. He also disputed the court's finding that he had breached his fiduciary duty to the Estate, as this had not been raised in any of Robin's motions and there was no evidence to support such a determination. Again, Matt did not raise the jurisdictional argument. Robin objected to his arguments and urged the court to deny the motion, which it did on May 19, 2023. This appeal now follows.

On appeal, Matt raises two arguments. The first addresses whether the circuit court had jurisdiction to decide Robin's claim for reimbursement, and the second addresses whether Robin's motion to compel should have been treated

as a motion for summary judgment and denied.[5]  Robin disputes these assertions, and we, similarly, find no merit in Matt's arguments.

Matt's first argument addresses subject matter jurisdiction.  While he raised this issue in his response to Robin's motion for reimbursement, the circuit court never ruled on this issue, and Matt never raised it again until in the present appeal.  In his prehearing statement, Matt stated that the circuit court "implicitly rejected [the jurisdictional argument] by considering the merits of Robin Miniard's claim."  Here, Matt argues that the district court has exclusive jurisdiction of the matter pursuant to KRS 24A.120(2) because it relates to probate, noting that the circuit court action had been resolved several years before Robin filed his motion to compel.  Robin asserts that this Court's reasoning in the first appeal also applies here.

In the earlier appeal, this Court set forth the applicable law when subject matter jurisdiction is at issue and determined that the circuit court had jurisdiction to decide that matter.  We shall adopt that reasoning:

> Subject-matter jurisdiction is defined as "the court's power to hear and rule on a particular type of

---

[5] We note that Matt's brief does not conform to the Kentucky Rules of Appellate Procedure (RAP) in two respects.  The statement of the case does not include "ample references to the specific location in the record supporting each of the statements contained in the summary" pursuant to RAP 32(A)(3), and the argument does not include "ample references to the specific location in the record" or "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner" pursuant to RAP 32(A)(4).  Robin has not raised this lack of conformity either in a motion or in his brief, and we shall therefore address this no further.

controversy." *Nordike v. Nordike*, 231 S.W.3d 733, 737 (Ky. 2007). "Subject matter jurisdiction is not for a court to 'take,' 'assume,' or 'allow.'" *Id*. at 737-38. Likewise, subject-matter jurisdiction cannot be waived if not timely asserted. *Id*. at 738. This is because "[a] judgment entered by a court without subject matter jurisdiction is void *ab initio*." *S.J.L.S. v. T.L.S.*, 265 S.W.3d 804, 833 (Ky. App. 2008). "Whether a court has the requisite jurisdiction to hear a case is a question of law." *Smith v. Doe*, 627 S.W.3d 903, 910 (Ky. 2021). Accordingly, we will review this issue *de novo* even though Matt failed to timely bring it to the circuit court's attention or otherwise oppose the Appellees' March 14 motion. *Id*.

Pursuant to KRS 24A.120(2), the district courts of this Commonwealth have "exclusive jurisdiction in . . . [m]atters involving probate, except matters contested in an adversary proceeding." (Emphasis added.) "Matters not provided for by statute to be commenced in Circuit Court shall be deemed to be nonadversarial within the meaning of subsection (2) of this section and therefore are within the jurisdiction of the District Court[.]" KRS 24A.120(3). Thus, even when an adversary proceeding has been commenced in circuit court, "the district court shall retain jurisdiction to entertain any motions or matters not related to the adversarial proceeding," even during the pendency of the circuit court action. *Mullins v. First American Bank*, 781 S.W.2d 527, 529 (Ky. App. 1989). Additionally, "at the conclusion of the circuit court action, [the district court is free to] proceed with the probate of the estate to its conclusion." *Id*.

In other words, the circuit court's jurisdiction is limited to deciding matters related to the adversarial proceeding before it. This is far easier stated than applied. Indeed, "the concept of [an] adversary proceeding is a puzzle to courts as well as practitioners." *Id*. (internal quotation marks and citation omitted). And, like a puzzle, each adversary proceeding and what it entails is somewhat unique. Therefore, it is important for

-11-

us to closely examine the nature of the adversary proceeding that was brought before the circuit court and the actions it took related thereto.

Ralph's estate was originally probated by the district court with Matt serving as executor per Ralph's will. However, on or about November 1, 2017, the Cousins filed the underlying circuit court action against Ralph's estate pursuant to KRS 395.510. In their complaint, the Cousins alleged that they were creditors of Ralph's estate by virtue of their agreement to provide care to Ralph. As alleged creditors of the estate, KRS 395.510(1) permitted the Cousins to bring their suit in circuit court "for the settlement of [Ralph's] estate[.]" *Id.* In turn, KRS 395.515 vested the circuit court with the authority to adjudicate their claim as creditors "to receive payment or distribution" from Ralph's estate. Additionally, in the event the circuit court determined that Ralph's assets were not sufficient to cover his estate's debts, the circuit court had the authority to order Ralph's real property sold to cover his debts. *Id.*

The agreed final judgment followed the parties' mediation of the Cousins' claim and arose after the Appellees had raised questions before the circuit court regarding Matt's actions as executor. During the mediation, a negotiated settlement was reached between all the parties. As part of the settlement, Matt agreed to certain terms involving the final settlement of the estate. Included within those terms was that Matt would remain executor on the condition that the terms of the parties' agreement were performed within 120 days. If not, the agreement provided that Matt would step down as executor and turn over all assets of the estate to Robin along with a full and accurate accounting of all receipts, expenditures, and actions taken while he was executor. The settlement agreement was memorialized by the circuit court as part of its agreed final judgment. When Matt allegedly did not comply with the terms of the settlement, the Appellees filed a motion with the circuit

-12-

court to compel Matt to do so.  The circuit court enforced the settlement agreement by granting the motion.  In this very limited context, we are of the opinion that the circuit court had the jurisdiction to do so based on the parties' agreement.

*Miniard*, 2022 WL 413999, at \*4.

In reaching this decision, the Court relied upon the Supreme Court of Kentucky's analysis in *McGuire*, 805 S.W.2d at 121 ("Where, and as we have held here, there is a binding and enforceable contract between a party and the personal representatives for the estate, and where the parties to that contract are before the court, it has in its sound judicial discretion the equity power to enforce that contract for the purpose of settling the estate.").

The Court then continued:

As part of the settlement agreement with the Appellees and the Cousins, Matt agreed to his removal as executor if certain terms were not met.  The agreement was part of and within the scope of the KRS 395.510 and 395.515 action for a "correct and lawful settlement of the estate."  "Settlement agreements are a type of contract[.]" *Adamson v. Adamson*, 635 S.W.3d 72, 77 (Ky. 2021).  And, "[w]ithin every contract, there is an implied covenant of good faith and fair dealing, and contracts impose on the parties thereto a duty to do everything necessary to carry them out." *Farmers Bank & Trust Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005); *see also Ranier v. Mount Sterling Nat'l Bank*, 812 S.W.2d 154, 156 (Ky. 1991).  Thus, we conclude that implicit in the agreement was Matt's promise to assist in carrying out his removal as

-13-

executor after the passage of 120 days should it become necessary.[6]

Further, the parties' settlement agreement was made part of a court order. The circuit court had the authority to enforce its own order by directing Matt to comply with the agreement. Thus, we cannot agree with Matt that the order on appeal is void. Matt agreed to his removal as executor after 120 days so that the estate could be settled as provided by KRS 395.510 and 395.515. The circuit court was simply enforcing the parties' contract "for the purpose of settling the estate." *McGuire*, 805 S.W.2d at 121. Accordingly, we find no error with respect to the circuit court's jurisdiction.

*Miniard*, 2022 WL 413999 at *5. This holding equally applies to the orders currently before this Court on appeal.

Matt relies on the case of *Maratty v. Pruitt*, 334 S.W.3d 107 (Ky. App. 2011), in support of his position that the circuit court lacked subject matter jurisdiction. In *Maratty*, this Court stated:

The issue we must resolve in this case is whether a district court's final judgment as to a probate settlement, albeit appealed by the administratrix, precludes a subsequent, separate circuit court action over estate administration matters which were or could have been raised in the district court. We hold that that the subsequent circuit court action is barred[.]

---

[6] This would necessarily include the completion of any ministerial acts before the district court necessary to have Robin formally appointed as executor of Ralph's estate. (Footnote 12 in original.)

*Id.* at 108. This was because "[t]he Jefferson District Court's adjudication of [the administratrix's] proposed final settlement precludes any additional litigation concerning the propriety of her actions." *Id.* at 113. Matt also points out that the *Maratty* Court distinguished other cases, such as *Priestley v. Priestley*, 949 S.W.2d 594 (Ky. 1997), in rejecting the argument that claims involving breach of fiduciary duty must be brought in the circuit court. *Maratty*, 334 S.W.3d at 111. However, we agree with Robin that *Maratty* is not on point, as in that case, the district court had already approved the final settlement, which is not the case here.

Robin relies upon the Supreme Court of Kentucky's decision in *Goff v. Edwards*, 653 S.W.3d 847, 853-54 (Ky. 2022), to assert that the circuit court retained jurisdiction:

> Our conclusion that the Jefferson Circuit Court has subject-matter jurisdiction of the underlying action rests on application of the plain language of the jurisdiction statutes to the facts of this case. As highlighted above, in accordance with KRS 24A.120(2) and (3), the circuit court's jurisdiction provided within KRS 395.510 and KRS 395.515 allows it, as stated in KRS 395.515, to resolve settlement and distribution claims "if it appears that there is a genuine issue as to what constitutes a correct and lawful settlement of the estate, or a correct and lawful distribution of the assets." While the circuit court has described the Sisters' claims as alleging mismanagement and fraud, the claims alleging that Goff and other family members owe money to the Estate satisfy the statute's requirement as there appears to be a genuine issue as to what constitutes a correct and lawful settlement of the Estate and/or a correct and lawful distribution of the assets. This action, an adversarial

-15-

proceeding, falls within the bounds of KRS 395.510 and
KRS 395.515.

Robin contends that settlement of the Estate could not be completed until the claims against Matt had been resolved. We agree.

Here, we must look to the language in the parties' motions and the Court's rulings. On March 14, 2019, the defendants (including Robin) filed a motion to compel, as well as an addendum, pursuant to the Agreed Final Judgment the parties had reached the previous year. In the motion and addendum, they raised issues related to Matt's counsel's proposed distribution and final settlement of the Estate, including $16,500.00 in legal expenses, $3,981.57 in property management fees, $2,778.85 in rental repairs, and $27,178.81 in property taxes. The defendants also requested that Matt be removed as executor if he did not provide a proper itemized accounting of the expenses pursuant to the Agreed Final Judgment. The court then entered an Agreed Final Judgment on April 5, 2019, which had been incorporated into the court's October 22, 2018, order reflecting that the parties had resolved their issues via mediation.[7] The Agreed Final Judgment included a provision regarding Matt's continuation as the executor and the effect his failure to perform would have:

> 2. The parties agreed that Matt Miniard shall continue as
> the Executor of the Estate of Ralph Eugene Miniard, Jr.

---

[7] As the Court noted in the previous appeal, there is no explanation for the delay in the entry of the Agreed Final Judgment.

However, if the Agreement described below has not been performed by the end of the 120 day period, Robin Miniard shall be appointed the Executor and Matt Miniard shall immediately turn over all assets of the estate to Robin Miniard with a full and accurate accounting of all receipts, disbursements and actions to be taken. This transfer shall occur no later than the 130th day after October 19, 2018.

On May 1, 2019, the court ruled on the motion to compel. The court appointed Robin as executor pursuant to the terms in the Agreed Final Judgment. It then ordered Matt to turn over all assets of the Estate in his possession as well as all records, bills, statements, and other business records that had been generated while he was the executor. Relevant to this appeal, the court ordered Matt, within 30 days of the order, to:

a. Make a full and complete itemized accounting of all disbursements made by him from the Estate of Ralph E. Miniard, Jr. as requested in the Motion to Compel and Addendum. This itemized accounting shall be submitted to the Court and mailed to . . . Counsel for Robin Miniard, Alexis Miniard and Joshua Miniard.

b. The itemization of accounts shall include the date [the check was] written; to whom [it was] written; the amount of the check and the purpose for which the check was written. An invoice for services or products shall be attached to the itemization of checks.

c. Any checks that are for services or fees from the John Miniard Estate; checks written for property taxes, services or fees for the "Spring Fork"; checks written for repairs; checks written for property management fees; shall state the reason funds were paid from the Ralph E. Miniard, Jr. Estate account.

-17-

d. All checks that are written for legal services shall state why the fee was paid from the Estate account.

The court listed the specific accounts to be itemized as follows: $16,500.00 in legal expenses; $3,981.57 in property management fees; $2,778.85 in repairs; and $27,178.81 in property taxes.

First, we reject Matt's assertion that the passage of time between the resolution of the original plaintiffs' claims in 2019 and Robin's motion for reimbursement in 2022 worked to divest the circuit court of jurisdiction. Matt's appeal of the 2019 order, and the denial of his motion to amend that order, was affirmed in February 2022, and that opinion became final in May of that year. Robin's new counsel entered an appearance in July 2022, and his motion to compel reimbursement of payments to the Estate was filed shortly thereafter in August. The several years' delay appears to be entirely due to Matt's pending appeal. Therefore, we find no merit in Matt's assertion that the court lost jurisdiction based upon the passage of time as the parties had certainly been disputing whether certain expenses were properly payable by the Estate in 2019.

Second, we agree with Robin that the circuit court retained subject matter jurisdiction in this case to enforce its order pursuant to *Goff*, *supra*. With his motion for reimbursement, Robin was requesting that the circuit court determine what, if anything, Matt owed to the Estate for expenses that were not related to the administration of the Estate when Matt served as the executor. This

issue arose from the circuit court's rulings, both before and after he had been removed as the executor, that Matt must produce records of distributions so that the interested parties could review their propriety. Not until the dispute regarding the questioned distributions was decided could the Estate be settled. Therefore, we agree with Robin that the circuit court retained jurisdiction to decide the issue of the propriety of these distributions.

For his second argument, Matt contends that the circuit court should have treated Robin's motion to compel as a motion for summary judgment and determined that disputed issues of material fact existed. This argument is unpreserved; Matt did not point this Court to where he raised this before the circuit court, and our review has not uncovered this information. Like the panel in the prior appeal, we decline to address this unpreserved argument. *See Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky. App. 2018) (discussing that a ground not raised before the lower court cannot be raised for the first time on appeal).

For the foregoing reasons, the orders of the Perry Circuit Court are affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Charles J. Lisle
Lexington, Kentucky

BRIEF FOR APPELLEE:

Frank C. Medaris, Jr.
Lexington, Kentucky